We find no error in the record, and the judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.

---

Thomas M. King et al., Respondents, *v.* Reon Barnes et al., Appellants.

The complaint herein contained, in substance, the following allegations The plaintiffs and defendant B. entered into a parol agreement to the effect that certain real estate should be purchased on joint account, the parties to contribute equally thereto; that a corporation should be organized to take the title, the capital stock to be equally divided between them. B. was made agent of the parties for the purpose of buying the property and organizing the corporation, with authority to select persons temporarily as directors, who were to give place on request to the real parties. The corporation was organized with a capital of $100,000; the

| | |
|---|---|
| 109 | 267 |
| 111 | 438 |
| 109 | 267 |
| 125 | 691 |
| 109 | 267 |
| 128 | 648 |
| 109 | 267 |
| 134 | 210 |
| 109 | 267 |
| 141 | 488 |
| 109 | 267 |
| 154 | 725 |
| 109 | 267 |
| 155 | 39 |
| 109 | 267 |
| 77 AD³208 |

defendants P., C , D., & G., together with B., were made directors. All
of the capital stock was subscribed for by B., except twenty shares, each
of the other directors subscribing for five shares. Real estate was pur-
chased by the associates for $100,000 and conveyed to the corporation, in
payment for which it issued its capital stock, 480 shares being issued
to B., or to persons indicated by him. He refused to carry out the
agreement. The relief asked was, among other things, for an account-
ing between defendant B. and plaintiffs and transfer to the latter of their
proportionate share of the stock; that the corporation and the other
defendants be restrained from disposing of the property, etc. The
answer was, in substance, a general denial. *Held,* that the corporation
and its directors were properly made parties (Code of Civil Pro., § 447);
that their appearance in the action, however, was purely voluntary, as
they had no interest, either personal or official, to be protected, and no
relief was asked against them, except such as would be conclusively
established by the determination of the issues against B. as to who were
the equitable owners of the stock.

The trial court rendered judgment in favor of plaintiffs on the issues
between them and B., but dismissed the complaint as to the corporation
and its directors. On appeal the General Term reversed this part of the
judgment, restored said defendants as parties, and without ordering a
new trial, rendered an absolute judgment on the facts. *Held,* no error.

Also, *held,* that said agreement was not void by the statute of frauds as
creating an interest in real estate, nor was it contrary to public policy or
without adequate consideration, and that it was immaterial whether the
agreement constituted a partnership in the technical legal sense, or
whether it was a joint enterprise; that it was to be enforced upon prin-
ciples applying to partnership transactions.

Also, *held,* that the allegations of the complaint presented a case of equita-
ble cognizance and showed a clear case for an accounting, and trial of
all issues incidentally arising upon such accounting.

The court found that the enterprise of purchasing the lands was, so far as
plaintiffs were concerned, for the ultimate benefit of two railroad cor-
porations, of which they were officers, and that they entered into it at
the request of said corporations. The moneys furnished, however,
were individual funds. It was objected that plaintiffs were not the real
parties in interest. *Held,* untenable; that the understanding with said
corporations did not constitute a trust or make the corporations parties
in interest

There is no principle of public policy which forbids competent parties
from entering into an agreement to form a corporation and providing
for its future management and control, if the corporation is created
according to statutory requirements, and the objects contemplated are
lawful and proper.

It appeared that the sum one of the plaintiffs advanced toward the pur-

chase, was subsequently refunded to him by one of the railroad corporations. *Held,* that this furnished no reason why, as between him and his associates, they should not respond to him for such advances.

Subsequent to the organization other real estate was purchased in aid of the joint enterprise, with funds furnished by plaintiff G., which was conveyed to the defendant corporation; it giving a mortgage to temporarily secure the advance. *Held,* that this advance was properly brought into the accounting; that the fact G. had other security was no defense to his associates when called upon to account.

As to whether such accounting and the enforcement of the judgment rendered thereon would operate as a satisfaction of the mortgage, *quære.*

On the accounting B. was, by the referee, debited $12,500 for an overcharge on account of the purchase of one of the parcels of land. It was objected that this involved a question of fraud, upon which B. was entitled to a jury trial. *Held,* untenable; that the question did not necessarily involve a charge of fraud; but if it did it was an incident to, and necessarily involved in, the accounting, and was properly disposed of by the referee.

The interlocutory judgment, directing an accounting, etc., on the part of defendant B., was affirmed at General Term, and a motion by B. for a new trial denied. The final judgment required the defendant corporation to appoint an annual meeting and proceed to the election of officers; it appealed directly from the final judgment. *Held,* that as the appeal of the corporation only brought up questions arising on the interlocutory judgment (Code Civil Pro. § 1336), the final judgment could not be questioned by it, and as far as B. was concerned it was proper.

The practice of entering orders upon incidental questions decided upon a trial, and appealing from the orders as well as the judgment, condemned.

(Argued March 20, 1888; decided April 10, 1888.)

THE appeals herein were:

*First.* An appeal, by all of the defendants, who appeared and answered, under section 1336 of the Code of Civil Procedure, from portions of a final judgment rendered in this action at a Special Term of the Supreme Court, and entered in the clerk's office of Richmond county on the 19th day of May, 1887. This appeal brought up for review an interlocutory judgment entered herein on August 3, 1886, and judgment of the General Term, entered on January 8, 1887, partly modifying and partly affirming the said interlocutory judgment.

*Second.* Appeal by the defendant Barnes alone, from a denial in the said General Term judgment of his motion for a new trial under section 1001 of the Code.

*Third.* Appeal by the said defendant Barnes from a judgment of the said General Term, entered on January 25, 1888, affirming those portions of the said final judgment which are not embraced in the appeal first above-mentioned; also affirming order of Special Term, which overruled the exceptions of Barnes to the referee's report, granted the final judgment herein and gave the plaintiffs an extra allowance.

The action was brought to procure the specific enforcement of an oral agreement alleged to have been made between the plaintiffs on the one side and the defendant Barnes on the other.

The substance of the original complaint is as follows: In November, 1885, an agreement was entered into between the plaintiffs, eight in number, and the defendant Barnes, to the effect that certain property on the north shore of Staten Island should be bought for the joint account; that a corporation should be formed under the act for the organization of business corporations (Laws of 1875, chap. 611), to take title to the property, the capital stock of which corporation should be issued to the respective parties in proportion to their several interests. Barnes was made the agent of the parties for the purpose of buying the property and organizing the corporation, with authority to select persons to act temporarily , ʳrectors, who were to resign upon request, and give ple ιo the real parties in interest. Pursuant to said agreement, the defendant The New York Transit and Terminal Company (limited) was organized with a capital stock of $100,000, the defendants Post, Carpenter, Disosway and Guion, together with Barnes, constituting the first board of directors, the four first named subscribing each for five shares of the capital stock, and Barnes subscribing for the remaining 980 shares for his own account to the extent of one-ninth, and as to the rest for the account of the plaintiffs. Shortly afterwards certain real estate, known as the Barton property, was bought by the associates for $100,000, and conveyed to the corporation so created and organized, in payment for which it created and issued the whole of its capital stock, being, as above mentioned,

$100,000. In the month of December, 1885, certain other real estate, known as the Duncan and Grace properties, was purchased at a cost of $183,000, and was conveyed to the corporation. The purchase-money was advanced by the plaintiff King, to secure which the corporation executed to him, as trustee, a mortgage for the amount of the advance, the mortgage being made for $250,000, to provide for the contingency of further advances being required to pay for other property that the associates might find it desirable to purchase. In the same month steps were taken to increase the capital stock of the company $900,000, so that the aggregate capital should be $1,000,000. Barnes, without the knowledge or consent of the plaintiffs, his associates, fraudulently, and without consideration, caused the company to issue to himself 7,000 shares of the increased capital stock so authorized. In the month of January, 1886, the plaintiffs King, Garrett, Spencer, Cowen and Davis demanded of Barnes that he should deliver to them, respectively, their due proportion of the original and lawful capital stock of $100,000 which he had subscribed for in his own name, on account of the associates offering to pay to him any sums of money that he might have advanced on their behalf. Before that there had been transferred to the nominees of the plaintiffs Boardman, Emmons and Wiman the shares to which they were respectively entitled. The shares in the name of Barnes belonging to the other plaintiffs he refused to transfer. Barnes had placed in the custody of the defendant Charles Coudert all the shares of the company standing in his name.

The prayer for relief was that a receiver be appointed of the shares in the defendant Barnes' name ; that the defendant Coudert be required to surrender the certificates in his possession to such receiver ; that the company and the other defendants be restrained from selling or in any manner disposing of the property ; that an accounting may be had between the defendant Barnes and the plaintiffs, and for such other relief in the premises as may be just and equitable.

The answers were substantially denials of the allegations of the complaint.

At the trial the plaintiffs moved to amend the complaint. At the close of the plaintiff's case the court dismissed the complaint against the defendant The New York Transit and Terminal Company (limited), and against the defendants Carpenter, Disosway, Post and Guion, directors of that company. An interlocutory judgment was rendered against the defendant Barnes, which directed an accounting before a referee. From so much of this interlocutory judgment as dismissed the complaint against the company and the directors, and from the order denying the motion to amend the complaint, the plaintiffs appealed to the General Term, and they also appealed from certain other provisions of the judgment. The defendant Barnes also appealed to the General Term from said judgment. The General Term reversed the order dismissing the complaint against the company and the directors, and reinstated them as parties defendant. It reversed the order denying motion to amend complaint. It affirmed the judgment against the defendant Barnes, modifying, however, the principles upon which the accounting should be had. It also held that without the amendment the complaint was sufficient to enable defendants to avail themselves of all the facts, and as the defendants, thus reinstated, were parties necessary to be brought in, but having no interest in the litigation, and as the interlocutory judgment determined the rights of the parties in interest, did not grant a new trial.

Under the interlocutory judgment of the General Term the accounting was had before a referee, who made his report. The defendant Barnes filed exceptions. On May 17, 1887, an order was made overruling the exceptions and directing a final judgment to be entered, and on the same day the final judgment was entered.

The further facts so far as material are stated in the opinion.

*Noah Davis* and *John H. Post* for appellants. The court will pronounce such judgment as the facts of the case call for;

the language of the prayer for relief is not of the slighest consequence. (*Rindge* v. *Baker*, 57 N. Y. 223; *Tyler* v. *Church*, 54 id. 632; *Murtha* v. *Curley*, 90 id. 378.) No other judgment than that of specific performance would accomplish the plaintiffs' object in bringing the action, or be " consistent with the case made by the complaint, and embraced within the issue." (Code, § 1207.) Specific performance is decreed on the sole ground that the damages which a court of law could give would be an inadequate remedy or compensation to the complainants. (5 Wait's Actions and Defenses, 766; Fry on Sp. Perf., § 44; 2 Story Equity Jurisp. § 717; *Odell* v. *Montross*, 68 N. Y. 505; 3 Parsons on Contr., *394.) The court below should not have decreed a specific performance of the contract alleged in the complaint. (2 Lindley on Partnership, 918.) In order to entitle himself to specific performance in any case, a plaintiff must state the alleged contract with accuracy and precision in the complaint, and prove it, as alleged, by satisfactory, unequivocal and indisputable evidence. (*Rome Exch. Bank* v. *Eames*, 1 Keyes, 592; *Bailey* v. *Ryder*, 10 N. Y. 370; *Neudecker* v. *Kohlberg*, 81 id. 301; *Southwick* v. *First Nat. Bank of Memphis*, 84 id. 428, 429; *Walker* v. *Hill's Exrs.*, 22 N. J. Eq. 520; *Allen* v. *Burke*, 2 Md. Ch. 537–539; *Parkhurst* v. *Van Cortlandt*, 14 Johns. 32; 5 Wait's Actions and Defenses, 824; *Tiernan* v. *Granger*, 65 Ills. 354; *Sims* v. *McEwans' Adm.*, 27 Ala. 191; *Phillips* v. *Thompson*, 1 Johns. Ch. 131; *Fardy* v. *Williams*, 38 Md. 502; *Brewer* v. *Wilson*, 17 N. J. Eq. 182; *Purcell* v. *Miner*, 4 Wall. 517; *Lobdell* v. *Lobdell*, 36 N. Y. 330; *Cronkhite* v. *Cronkhite*, 94 id. 327.) The plaintiffs have not sustained the burden either of a sufficient complaint or of the requisite proofs. (*Bruce* v. *Tilson*, 25 N. Y. 198; *Thompson* v. *Smith*, 63 id. 304, 305; *Haight* v. *Child*, 34 Barb. 192; *Lester* v. *Jewett*, 12 id. 505; *Irwin* v. *Bleakly*, 67 Penn. St. 28; Fry on Sp. Perf., § 903 [3d Am. ed.]; *Bell* v. *Thompson*, 34 Ala. [N. S.] 636; *Bogardus* v. *N. Y. Life Ins.*

*Co.,* 101 N. Y. 334 )   The agreement, as alleged in the complaint, cannot be specifically enforced, and it is void.   (Fry on Specific Perf. [3d ed.] §§ 440–443; Pomeroy on Sp. Perf., § 166; *Foot* v. *Webb,* 59 Barb. 55; *Reeder* v. *Sayre,* 70 N. Y. 183; *W. Trans. Co. of Buffalo* v. *Lansing,* 49 id. 505.)   The acts of the parties after the making of an agreement cannot be invoked to render it complete or definite and certain.   (Fry on Sp. Perf., §§ 440, 572 [3d Am. ed.]; *Rathbun* v. *Rathbun,* 6 Barb. 107; *Richmond* v. *Foote,* 3 Lans. 248, 249; *Cronkhite* v. *Cronkhite,* 94 N. Y. 328; Pomeroy on Specific Performance, §§ 145, 146, 159, 162–164; *Foot* v. *Webb,* 59 Barb. 53, 55; 49 N. Y. 505; *Jordan* v. *Fay,* 40 Me. 132; *Hammer* v. *McEldowney,* 46 Penn. St. 336; *Clark* v. *Chamberlain,* 112 Mass. 23; *Holmes* v. *Evans,* 48 Miss. 247; *Wright* v. *Weeks,* 25 N. Y. 161, 162; *Drake* v. *Seaman,* 97 id. 233–237; *Lobdell* v. *Lobdell,* 36 id. 330; *Mehl* v. *Von Der Wulbeke,* 2 Lans. 267; affirmed, 46 N. Y 540; *Dillaye* v. *Greenough,* 45 id. 444, 445; *Deery* v. *Cray,* 10 Wall. 269; 2 Parsons on Cont. * 566; *Lawrence* v. *Saratoga Lake R. R. Co.* 36 Hun, 471, 472; *Shakespear* v. *Markham,* 72 N. Y. 406; Fry on Specific Performance, § 286; *Van Doren* v. *Robinson,* 1. C. E. Green, 259.)   The second portion of the alleged agreement is not supported by any consideration.   (Bispham's Eq., § 372; Willard's Eq. Jur. [Potter's ed. 323] 263; 2 Story Eq. Jur., § 787; *Burling* v. *King,* 66 Barb. 642; *Cronkhite* v. *Cronkhite,* 94 N. Y. 327; *Whitaker* v. *Whitaker,* 52 id. 370; *Wilbur* v. *Warren,* 104 id. 196; *Mallory* v. *Gillet,* 21 id. 414; *Coleman* v. *Eyre,* 45 id. 41; *Mehl* v. *Von Der Wulbeke,* 2 Lans..269; Parsons on Cont. * 405; 2 Lindley on Partnership, 918.)   There was no partnership between the plaintiffs and the defendant, nor is there any question of agency or other fiduciary relation between them, nor any question of fraud. (*Levy* v. *Brush,* 45 N. Y. 596; *Sage* v. *Sherman,* 2 id. 427; 1 Lindley on Partnership, 31, 32; *Rynell* v. *Lewis,* 15 Mees. & W. 517; *Bailey* v. *Macauley,* 13 Q. B. 815; Angell & Ames on Corporations, §§ 41, 591; 16 Am. Law Review, 281, 357, 671; *Colburn* v. *Wheelock,* 34 N. Y. 443; *Buff. & N. Y. City R. R. Co.* v.

*Dudley,* 14 id. 344; *Upton* v. *Tribilcock,* 91 U. S. 45; *Webster* v. *Upton,* 91 id. 65; *Buff. & Jamestown R. R. Co.* v. *Gifford,* 87 N. Y. 299; 14 id. 347; *Spear* v. *Crawford,* 14 Wend. 20; *Downing* v. *Potts,* 3 Zabr. [N. J.] 66; *Lathrop* v. *Kneeland,* 46 Barb. 437, 438; *Siemon* v. *Schurk,* 29 N. Y. 600.) The alleged contract and the plaintiffs' claim to ownership of the stock, property and control of the defendant corporation, is contrary to public policy and the policy of the law, and is wholly unenforceable in a court of equity. (*Terwilliger* v. *Brown,* 59 Barb. 15; *Jewett* v. *Miller,* 10 N. Y. 402; *Boerum* v. *Schenck,* 41 id. 188; *Ten Eyck* v. *Craig,* 62 id. 419; *Cowee* v. *Cornell,* 75 id. 100; *Evans* v. *Folson,* 5 Minn. 429.) The contract, as alleged in the complaint, relates primarily to an agreement between the parties to purchase real estate for their joint account and benefit, and so much of it as relates only to the purchase of lands is clearly within the statute of frauds. (2 R. S. 135, §§ 6, 8; *Levy* v. *Brush,* 45 N. Y. 594–597; *Hockner* v. *Gentry,* 3 Metc. [Ky.] 474; Story's Eq. Jur., § 1201 *a; Church* v. *Kidd,* 3 Hun, 265; *Sturtevant* v. *Sturtevant,* 20 N. Y. 40; *Wright* v. *Weeks,* 25 id. 157, 159, 160; *Lathrop* v. *Hoyt,* 7 Barb., 61–64; *Kelhun* v. *Smith,* 33 Penn. St. 158; *Wheeler* v. *Reynolds,* 66 N. Y. 233–237; *Dung* v. *Parker,* 52 id. 496–500; *Loomis* v. *Loomis,* 60 Barb. 25–27; Wood on Frauds, § 214; Reed on Statute of Frauds, § 690; *Kelly* v. *Webster,* 12 C. B. 290; *Burk* v. *Picknell,* 27 Vt. 168; *Welles* v. *Cowles,* 2 Conn. 567; *Howard* v. *Easton,* 7 Johns. 205; *Green* v. *Armstrong,* 1 Denio, 554.) The alleged contract is an entire contract resting upon a single consideration, if it rests upon any, and the subject-matter, land and stock of the corporation, based upon it, is connected together in one transaction. It is, therefore, incapable of being severed, and being void, under the statute of frauds, as to the purchase of the real estate, as is void to every part of it, and no decree of specific performance can be founded thereon. (*Thayer* v. *Rock,* 13 Wend. 63; *De Beerski* v. *Paige,* 36 N. Y. 539–542; *Harsha* v. *Reid,* 45 id. 420; *Dow* v. *Way,* 64 Barb. 257–264; *Ogden* v. *Fossick,* 4 De G., F. & J. 434; *Talbot* v. *Adams,*

12 Week. Dig. 411; *Snyder* v. *Neefus*, 53 Barb. 68; *Van Alstyne* v. *Wimple*, 5 Cow. 164; *Sternberger* v. *McGovern*, 56 N. Y. 17; *Wilkinson* v. *Clements*, L. R., 8 Ch. App. 110, 112; *Jackson* v. *Evans*, 44 Mich. 513; *Fuller* v. *Reed*, 38 Cal. 109.) The actual subject-matter of this action is the shares of stock of the defendant corporation, and the statute of frauds constitutes an insuperable objection to the judgments of the court below. (*Gray* v. *Barton*, 55 N. Y. 72; *Young* v. *Young*, 80 id. 430; 2 R. S. 136, § 3; *Hunter* v. *Wetsell*, 57 N. Y. 375–377; *Truax* v. *Slater*, 86 N. Y. 632; *Artcher* v. *Zeh*, 5 Hill, 205; *Brabin* v. *Hyde*, 32 N. Y. 522; Reed on Statute of Frauds, §§ 234, 235; Dos Passos on Stockbrokers, 765; *Passaic Mfg. Co.* v. *Hoffman*, 3 Daly, 515; *Sherwood* v. *Tradesmen's Bank*, 16 Week. Dig. 522; *Brownson* v. *Chapman*, 63 N. Y. 625, 626; *Tisdale* v. *Harris*, 20 Pick. 9, 12–14; *North* v. *Frost*, 15 Conn. 404; *Shindler* v. *Houston*, 1 N. Y. 263, 265, 266, 273.) It was not necessary for the defendants to set up the statute of frauds in terms in their answers. (*Gibbs* v. *Nash*, 4 Barb. 451; *Reynolds* v. *Dunkirk & S. L. R. R. Co.*, 17 Barb. 615–617; *Haight* v. *Child*, 34 Barb. 191, 192; *Morrill* v. *Cooper*, 65 id. 516; *Marston* v. *Swett*, 66 N. Y. 209; *Wright* v. *Weeks*, 25 id. 157; *Baltzen* v. *Nicolay*, 53 id. 470, 471; *Cozine* v. *Graham*, 2 Pai. 181; *Ontario Bank* v. *Root*, 3 id. 481; *Harris* v. *Knickerbocker*, 5 Wend. 643, 644; *Rowton* v. *Rowton*, 1 Henng & M. [Va.] 92; *Hocker* v. *Gentry*, 3 Metc. [Ky.] 474; *Walker* v. *Hills' Exrs*, 22 N. J. Eq. 519; *Buttemere* v. *Hayes*, 5 Mees. & W. 461, 462 and note; *Dean* v. *Dean*, 9 N. J. Eq. 427; *Duffy* v. *O'Donovan*, 46 N. J. 226; *Alger* v. *Johnson*, 6 T. & C. 633.) The considerations heretofore urged, and the principles invoked, would apply with equal force to the case at bar, even if the action could be regarded as one brought to enforce a trust claimed to be created by the alleged contract. (1 R. S., 728, § 51; *Brown* v. *Cherry*, 59 Barb. 638; *Garfield* v. *Hatmaker*, 15 N. Y. 478; *Ocean Nat. Bank* v. *Olcott*, 46 id. 16, 17; *Everett* v. *Everett*, 48 id. 222, 223; *Sturtevant* v. *Sturtevant*, 20 id. 40; *Wheeler*

v. *Reynolds*, 66 id. 233–235 ; *Kellum* v. *Smith*, 33 Penn.
St. 158 ; *Wood* v. *Rabe*, 96 N. Y. 426 ; 6 R. S., 135, § 6 ;
*Levy* v. *Brush*, 45 N. Y. 595–597 ; *Miazza* v. *Yerger*,
53 Miss. 139, 140 ; *Pooley* v. *Budd*, 14 Beaven, 45 ; *Siemon*
v. *Schurk*, 29 N. Y. 600 ; *Walker* v. *Hills' Exrs*, 22 N. J. Eq.
528.) The payment of money upon a parol contract for the
sale of land is not a sufficient partial performance within the
meaning of the rule in equity. (*Malins* v. *Brown*, 4 N. Y.
403–410 ; *Miller* v. *Ball*, 64 id. 291, 292 ; *Baldwin* v. *Palmer*,
10 id. 234, 235 ; *Wheeler* v. *Reynolds*, 66 id. 232 ; *Free-
man* v. *Freeman*, 43 id. 38 ; *Brewer* v. *Wilson*, 17 N. J.
Eq. 184 ; *Cagger* v. *Lansing*, 43 N. Y. 551, 552 ; *Odell*
v. *Montross*, 68 N. Y. 505 ; *Winchell* v. *Winchell*, 100
id. 163 ; 3 Parsons on Contr. *394 ; Pomeroy on Sp. Perf.,
§§ 99–101 ; 2 Story Eq. Jur. § 717 ; Willard's Eq. Jur.
286 [Potters ed.] 354 ; *Cole* v. *Potts*, 10 N. J. Eq. 69 ;
Bispham's Eq., § 385 ; *Luckett* v. *Williamson*, 37 Mo. 388 ;
*Caton* v. *Caton*, L. R., 1 Ch. App. 148 ; *Rathbun* v. *Rath-
bun*, 6 Barb. 106, 107 ; *Cronkhite* v. *Cronkhite*, 94 N. Y. 327,
328 ; *Richmond* v. *Foote*, 3 Lans. 248, 249 ; *Petrick* v. *Ashcroft*,
19 N. J. Eq. 340 ; *Potts* v. *Cole*, 10 id. 68.) Neither the
court nor the jury can make an agreement for the parties.
(*Foot* v. *Webb*, 59 Barb. 55 ; Chitty on Contracts, 73.) The
court, in this action for specific performance, had no right to
find any other agreement than that set up in the complaint.
(*Foot* v. *Webb*, 59 Barb. 55 ; Chitty on Contracts, 73 ; *Bennett*
v. *Bates*, 94 N. Y. 368, 369 ; *Smith* v. *Develin*, 23 id. 365 ;
*Valentine* v. *Conner*, 40 id. 253.) The parties did not
become partners by making a contract to buy lands for their
joint account and benefit, and to hold them through a medium
of a corporation to be organized. (*Chester* v. *Dickerson*, 56
N. Y. 1.) The relief given by a judgment must be consistent
with the case made by the complaint and embraced within the
issue. (Code, § 1207 ; *Stevens* v. *Mayor*, *etc.*, 84 N. Y.
305 ; *Neudecker* v. *Kohlberg*, 81 id. 301 ; *Wright* v. *Delafield*,
25 id. 270, 271 ; *James* v. *Brown*, 1 Dall. 340 ; *Newbold* v.
*Sims*, 2 S. & R. 321.) Neither the General Term, in making

this direction in its judgment, nor the referee, in trying the question, nor the Special Term, in rendering judgment upon the report of the referee, had any jurisdiction over the question of fraud, or any power to make a lawful adjudication with respect thereto. (*Brinkley* v. *Brinkley*, 47 N. Y. 48; *Kerr* v. *Kerr*, 41 N. Y. 275; *Ferguson* v. *Crawford*, 70 id. 256, 257; *Marsh* v. *Falker*, 40 id. 565; *Taylor* v. *Guest*, 58 id. 566; 3 Wait's Actions and Defenses, 442, 445, 446; *People* v. *Cook*, 8 N. Y. 79; 6 Wait's Actions and Defenses, 820; *Bradley* v. *Aldrich*, 4 N. Y. 511; *Wheelock* v. *Lee*, 74 id. 500.) Since the appellants had had no opportunity to present any evidence on the issues against them in contradiction or explanation of the plaintiffs' evidence, and since the appellate court could not see that it was impossible for them to do so, it was error not to grant them a new trial. (*Stowell* v. *Hazlett*, 57 N. Y. 637, 638; *Hall* v. *Erwin*, Id. 643; *Guernsey* v. *Miller*, 80 id. 183; *Ehrichs* v. *De Mill*, 75 id. 370.) Where there is an issue upon material facts which may possibly be decided in more than one way, there should be a new trial ordered upon the reversal of a judgment by the General Term. (*Gathrop* v. *Leary*, 89 N. Y. 622; *Thomas* v. *N. Y. Life Ins. Co.*, 99 id. 253.) This action cannot be maintained, because the whole scheme of the contract, and all that was done under it in the creation of the corporation, were gross and palpable frauds on the part of the plaintiffs and corporations they represent under the laws of this state, which ought not and cannot have any sanction from its courts. (*Sweet* v. *Trusler*, 52 Barb. 271.; *Moseley* v. *Moseley*, 15 N. Y. 336; 3 Wait's Actions and Defenses, 199, 477; Bispham's Equity, 61; 1 Story's Eq. Jur., §§ 298, 301.)

*W. W. MacFarland* for respondents. None of the defendants except Barnes has a right to appeal. (*Chase* v. *Vanderbilt*, 62 N. Y. 307; *McHenry* v. *N. Y. P. & O. R. Co.*, 25 Fed. R. 65; *Hackley* v. *Hope*, 2 Abb. Ct. App. Dec. 298; *Ross* v. *Wigg*, 100 N. Y. 243.) The statute against frauds is never allowed to be used as an instrument for perpetrating

fraud and securing the fruits of it. (*Johnson* v. *Brookes*, 93
N. Y. 342.) A partnership for dealing in land may be proved
by parol evidence. (Lindley on Partnership, § 87; *Chester* v.
*Dickerson*, 54 N. Y. 1.) The agreement between the
associates made them copartners in the enterprise. (*Ander-
son's Case*, L. R., 7 Ch. Div. 75, 96; *Moore* v. *Richmond*, 97
Ill. 303; *Richards* v. *Grinnell*, 63 Iowa, 44; 18 N. W. Rep.
668; *Hunt* v. *Erickson*, 23 id. 832; *Bybel* v. *Hawkett*,
12 Fed. Rep. 649; *Sutherland* v. *Carter*, 52 Mich. 151, 471;
*S. C.*, 18 N. W. Rep. 223, 375; *Cooley* v. *Broad*, 29 La.
Ann. 345; *S. C.*, 29 Am. R. 332; *March* v. *Russell*, 66 N. Y.
288; cited in 16 Abb. N. C., 383, 384; Lindley on Partnership, 1.)
The acts that followed the creation of the corporation — the
creation of the orignal capital stock — were all performed in
execution of the agreement. (Morawetz on Corporations, §§
227, 228; *Sawyer* v. *Hoag*, 17 Wal. 610; *Upton* v. *Englehart*,
3 Dill. 497.) Such business corporations are in their main
characteristics only copartnerships. (*Robinson* v. *Smith*, 3
Paige, 232; *R. Co.* v. *Allerton*, 18 Wal. 235; *Bacon* v.
*Robertson*, 18 How. U. S. 485; *Foss* v. *Harbottle*, 2 Hare, 491.)

RUGER, Ch. J. The questions involved in this case are
difficult and complicated, arising not only from the number
and variety of the questions themselves, but also from the
peculiar and unusual mode in which they are brought up for
review.

Two appeals have been taken; one by all of the defendants
directly from a final judgment rendered at Special Term to
this court. This appeal brings up nothing but an interlocu-
tory judgment previously rendered by the General Term and
the order of that court denying defendant Barnes' motion for
a new trial. The other appeal is taken by the defendant
Barnes alone from an affirmance by the General Term of the
final judgment, and brings before us for review the proceed-
ings had in the action subsequent to the interlocutory
judgment.

Thus, in one form or another, it is claimed that most of the

orders and judgments heretofore made and rendered in the action in the courts below, are now before us for review.

The quite objectionable practice has also been pursued of entering orders — upon incidental questions decided upon the trial, and appealing from such orders, as well as from the judgments, thus bringing the same question up in two forms.

The nature of the action, as appears by the complaint, concisely stated, was in equity to obtain an accounting between several partners as to their respective payments and advances on account of the joint enterprise, and to secure a distribution of the partnership assets, consisting of shares in the defendant corporation, among its members, according to their respective rights therein. The answers set up no affirmative defense and consisted mainly, if not altogether, of denials of the allegations of the complaint.

A trial at Special Term resulted in an interlocutory judgment determining the issues in favor of the plaintiffs and providing for the taking of an account. On appeal by the defendants from this judgment to the General Term, it was modified in some respects and, as modified, was affirmed.

The parties originally named as defendants in the action were Barnes, The New York Transit and Terminal Company, Post, Carpenter, Disosway and Guion, president and directors of such company, and Bonner, Francis, Morrow and Coudert, alleged to be custodians of the shares of stock, in which the assets of the partnership were invested. The defendants Bonner, Francis, Morrow and Coudert, having no personal or pecuniary interest in the controversy, very properly did not appear or answer in the action. The defendants, The New York Transit and Terminal Company, and Post, Carpenter, Disosway and Guion, however, did appear and answer, and have since participated actively in its defense, as the aids and auxiliaries of the defendant Barnes.

It will be convenient to treat the questions in which the defendant corporation and its directors are solely interested, before proceeding to consider those with which the defendant Barnes is exclusively concerned. These defendants, although

having no pecuniary interest in the event of the action, were proper parties to an equity action under its general rules of practice, as well as by section 447 of the Code of Civil Procedure, in order that a complete determination and settlement of the questions involved might be had, and that the plaintiffs might receive the full benefit and enjoyment of the property which the final judgment might award them, relieved from any obstacle which such parties might interpose thereto. (Daniels Ch. Pl. 296 *et seq ; Robinson* v. *Smith,* 3 Paige, 222.) Their appearance in the action, however, was purely voluntary, and they could safely have refrained therefrom, without jeopardizing any right or interest which they owned or possessed, either personally or officially, and without incurring any liability whatever for so doing. They could not, under these circumstances, have become entitled to costs in the action as against the plaintiffs, and the only effect of their appearance was to subject them to costs, in the discretion of the court, if it should finally determine they had unnecessarily defended.

The complaint asked for no relief or judgment against them, except such as would be conclusively established by a determination of the issues against Barnes, and the relief sought against them was purely incidental thereto. At the close of the plaintiffs' case on the trial they moved the trial court to dismiss the complaint as to them, upon the ground that no case, either upon the evidence or pleadings, had been made for an affirmative judgment against them, and that they were unnecessary parties to the action, which motion was granted  That court also declined to allow the plaintiffs to amend their complaint so as to set forth more in detail the facts authorizing a recovery against Barnes, and the necessity of retaining the other parties as defendants in the action; but, upon an appeal from these orders by the plaintiffs to the General Term, that court reversed them and restored the defendants as parties to the action and amended the complaint as requested by the plaintiffs. Upon an appeal by the defend-

ant The New York Transit and Terminal Company, and its directors, from this order, to this court, it dismissed their appeal, holding that the amendment was within the power of the court, under section 733 of the Code, and did not substantially change the claim of the plaintiffs and was, therefore, a discretionary order. Any question, therefore, as to the propriety of this order is eliminated from these appeals.

It is now claimed by these defendants that it was error in the General Term to reverse the order of the trial court dismissing the complaint as to them and rendering an absolute judgment thereon without affording them an opportunity by a new trial, to controvert the allegations of the amended complaint, and try the issues alleged to have been thereby presented. This court has, as before stated, decided that the amendment did not substantially change the plaintiffs' claim, and it is quite evident that the complaint did not, either before or after amendment, present any material issue in which these defendants were interested. The only real issue in the case was between the plaintiffs and the defendant Barnes, as to who were the real or equitable owners of the stock in Barnes' possession, and in the settlement of this question these defendants had no interest. In case the plaintiffs succeeded they would be entitled to so much stock as the court might award to them respectively, and the consequent rights which their ownership of such stock gave them in the defendant corporation, and if they were defeated the title to the stock would remain as it was, and no right of the company would in either event be affected. Neither the regularity of the organization of the defendant corporation, nor the title to the property which it had acquired, was questioned or disputed.

It is quite immaterial to the real controversy whether the corporation was organized by Barnes, or by Barnes and the plaintiffs acting together; it was in any event the custodian of certain property which in equity belonged to its stockholders and the right to which was being litigated between them. The corporation had issued and delivered this stock to Barnes, or the persons indicated by him, and thereafter had no further

interest in its ownership or control.    Under these circumstances the General Term proceeded to render judgment upon the facts of the case without ordering a new trial.

Unless it appeared that there was some necessity for a new trial, arising either out of some material issue left untried, or rendered necessary by the amendment to the complaint in which the defendant corporation had a legal interest, it was quite unnecessary to order a new trial.    The rule is stated, in *Guernsey* v. *Miller* (80 N. Y. 184), that " where there is an issue upon material facts, which may possibily be decided in more than one way on another trial, there should be a new trial ordered upon the reversal of a judgment by the General Term." (See, also, *Ehrichs* v. *De Mill*, 75 N. Y. 370.) As we have seen there was no such issue, and such was the claim of these same defendants when moving for a dismissal of the complaint as to them on the trial.    This conclusion leaves for consideration only the questions raised by the two appeals taken by Barnes, viz.:    That from the final judgment rendered, and the order made overruling exceptions to the referee's report by the Special Term, and the appeal from the judgment of General Term modifying and affirming such final judgment.

These appeals, it is claimed, bring up for review the judgment of the General Term, modifying and affirming the interlocutory judgment, and also its order denying defendant (Barnes) motion for a new trial upon exceptions.    They also bring before us the questions raised upon the accounting and in the rendition of final judgment, both by the Special and General Terms.

The result arrived at, leaves us to deal with the merits of the controversy as existing between the plaintiffs and the defendant Barnes, unembarrassed by extraneous questions. The trial court has found, upon conflicting evidence and substantially in accordance with allegations of the complaint, that " in the month of November, 1885, an agreement was made by and between the plaintiffs, to which the defendant Barnes was permitted to become a party because of his repre-

sentations of his ability to render valuable services in the acquisition of the property that it was proposed to purchase on Staten Island. This agreement provided that a corporation should be created and organized under the laws of this state, for the purpose of taking title to such property as might be purchased, and the development and use thereof for such terminal facilities as the railroad companies before mentioned might require, as well as for the erection of store-houses and other structures for commercial purposes generally. It was provided that the corporation so to be created should pay for the property such prices as might, upon consideration, appear to be just and reasonable, by means of the issue of full-paid capital stock or otherwise. It was further provided that the parties to this agreement and arrangement, namely, the plaintiffs and the defendant Barnes, should bear equally the cost of such properties as might be purchased and all expenses incident to the creation and organization of the corporation and of the contemplated enterprise generally; and they were to share equally in the profits, benefits and advantages that might accrue from the execution of the agreement."

It was further found that such company was organized and thereafter acquired large amounts of property which was paid for by moneys advanced to or for it under such agreement by some of the parties thereto. It was also found that all of the stock of said company, consisting of 1,000 shares, of the par value of $100 each, with the exception of five shares retained by each of the four directors to vest them with a qualifying interest to enable them to act as directors, was subscribed for by said Barnes, and 980 shares thereof were issued and delivered to him, of which 326 shares afterwards came to the hands of the respective appointees of the several plaintiffs, Winan, Emmons and Boardman. It was also substantially found that the defendant Barnes, subsequently, wrongfully refused to deliver any shares of stock to the several plaintiffs other than said Winan, Emmons and Boardman, or to carry out and perform the provisions of the said agreement.

It is claimed by the appellants that the agreement referred

to was void by the statute of frauds, as creating an interest in real estate by parol; that it was contrary to public policy and without adequate consideration, and was so incomplete and uncertain in its terms that specific performance of its provisions could not be decreed.

We consider these objections to be untenable, and some of them too frivolous to merit serious consideration. A sufficient consideration is afforded to it by the mutual promises of the respective parties to contribute equally to the capital required to carry out the contemplated enterprise, and their agreement to share equally in the profits and advantages expected to accrue therefrom. It is entirely immaterial whether this agreement constituted a partnership in a technical legal sense, or whether it was a joint enterprise to be conducted by the parties for their mutual benefit. So far as their rights and liabilities are concerned in this case, the result is the same, and rests upon the express terms of the agreement, and they are now to be enforced upon the principles applying to partnership transactions. (*Dyckman* v. *Valiente,* 42 N. Y. 551; *Anderson's Case,* 7 L. R., Ch. Div. 75.)

The agreement was such a one as the parties were competent to make, and the objects contemplated by it and the means selected to carry them out, were lawful and proper, and were not contrary to public policy or obnoxious to any law to which we have been referred. (Story's Eq. Juris., § 1207; *In re Staten Island Rapid Transit Co.,* 103 N. Y. 251; *Marie* v. *Garrison,* 83 N. Y. 14.)

The validity of a parol agreement between parties to engage in the business of buying and selling lands, and that it is not open to the objection that it violates the statute of frauds, was expressly decided by this court in the case of *Chester* v. *Dickerson* (54 N. Y. 1), and the principles there laid down apply equally to the case of lands purchased under a similar agreement to be used for commercial purposes, or to be sold or transferred to other persons or corporations for such uses. The facts found by the trial court show that the purpose for which the lands in question were to be purchased, as well as the method by which they were to be transferred, were law-

ful, and the evidence in the case does not establish anything to the contrary of this finding.

What might have been the remedies of the parties to this contract if it had remained unexecuted, and there had been a breach thereof, is quite unnecessary to inquire, inasmuch as the contract was subsequently executed, and large sums of money were advanced and expended upon the faith of it in the formation of the corporation, and in the purchase of the lands intended to be used in the contemplated enterprise.

The action is not one to enforce specific performance of the agreement, but, it having been executed, it is to establish the rights of parties advancing money and incurring liabilities in reliance thereon against other parties liable by the express terms of the contract to contribute equally to such advances and share such liabilities. Such an action is peculiarly one for the cognizance of a court of equity, and it has entertained jurisdiction of like cases from time immemorial. (1 Spence's Eq. Jurisdiction, 664; Story's Eq. Jurisprudence, §§ 466, 1207; *Dyckman* v. *Valiente, supra; Whiton* v. *Spring,* 74 N. Y. 170.) The rule as stated by Pomeroy, in his Equity Jurisprudence (§ 1421), is, that "the equity jurisdiction is also practically exclusive in proceedings for an account and settlement of partnership affairs. * * * The equitable jurisdiction over partnerships is a necessary outgrowth of the jurisdiction over accounting, and the remedies of dissolution, injunction and receivership are incidents necessary to a final and complete relief." And he further says, in section 112, that the remedy of accounting "is clearly analogous to the remedy of compensation, and is generally used in connection with and auxiliary to some form of it. It is also a legal remedy, but has become, to a great extent, equitable. It is a necessary step in many forms and varieties of pecuniary relief, and sometimes is an essential preliminary in establishing rights of property in lands or chattels."

The contention of the defendant Barnes that he has the right to retain the possession and control of the property, mainly purchased with the money of his associates, violates

the plainest principles of equity, and should receive the emphatic condemnation of the court. The allegations of the complaint show a clear case for an accounting under established precedents, and the jurisdiction of a court of equity to direct it, and to try all issues incidentally arising thereon upon the accounting, is indisputable. (Equity Draftsman [4th ed.], 301, *et seq ;* Story's Eq. Jurisprudence, §§ 466, 1207.)

It is also urged by the appellants that the plaintiffs are not the real parties in interest, and cannot, therefore, maintain the action. This claim is founded upon the finding of the trial court, that the enterprise of purchasing terminal facilities for railroads at Staten Island was intended, so far as the plaintiffs were concerned, for the ultimate benefit of the Baltimore and Ohio Railroad Company and the Staten Island Rapid Transit Company, and that five of the plaintiffs were connected officially with the first-named company; three others with the last-named company, and that they consented, at the request of said companies, to engage in the enterprise of purchasing and taking title to lands for terminal facilites in their own names, or in that of some appointee of theirs, to serve the interests of such companies. We do not think that this understanding constituted a trust, or made the railroad companies parties in interest to the contract. It was obviously the main object of the arrangement that the plaintiffs should act in the purchase of such lands in their individual capacity, and should enter into contract as individuals, and become liable in such character to each other for the performance of the contract. Such money as was furnished by them to carry out the contract was individual funds, and the property thereby acquired became individual property. That there was an intention on the part of the plaintiffs, ultimately, to turn over this property to the several companies referred to, and an expectation on their part that they should be reimbursed for their risk, trouble and outlay by such companies, did not, upon the facts in this case, constitute a trust which relieved them from personal liability under the contract, or deprived them of their individual interest therein.

Among the grounds upon which a dismissal of the complaint was requested was, " that the agreement to form a corporation, and that other persons named shall be entitled to participate in that corporation in the manner proved here, is illegal and void as against public policy." The exception to the refusal to grant this motion is the only one affording any basis for the argument made before us, that the contract was contrary to public policy. The language employed in stating the motion is quite vague and indefinite and affords but little information as to the real grounds upon which it was intended to be supported. How it can be illegal for parties to make an agreement to form a corporation, and to provide therein what their respective interests in such corporation shall be, we are quite unable to see. (*Marie* v. *Garrison, supra ; Anderson's Case, supra.*) A corporation cannot be formed without a preliminary agreement among parties proposing to form it, as to the mode and manner of doing so, and we see no objection to the parties forming such agreement, and intending to furnish the capital to establish it, from also agreeing that one of their number should subscribe for the whole stock intended to be taken by the associates, and from determining the interest which they should respectively take therein. (*Anderson's Case, supra.*) If the corporate organization intended to be formed is created according to the requirements of the statute, and the objects contemplated by it are lawful and proper, there is no principle of public policy which forbids competent parties from entering into an agreement to form it, and provide for its future management and control, if conducted according to the rules of law respecting such a subject. (*Anderson's Case, supra.*)

In the modification of the interlocutory judgment made by the General Term, it was determined that, in the account to be thereafter taken, the said plaintiffs, Wiman, and Garrett, should be credited respectively, the said Wiman with $70,000, paid for the Barton property, and the said Garrett with $183,000, used in the purchase of the Duncan and Grace properties. The trial court found that the said Wiman and Garrett advanced

individually and respectively the sums stated, and the judgment of the General Term gave them only the legitimate benefit of these findings. Such findings were based upon satisfactory evidence of such advances, and no legal reason can be seen why these credits should not be made.

It is claimed by the appellants that the evidence showed that the Rapid Transit Company subsequently repaid to Wiman the amount expended by him, but this furnishes no reason why, as between him and his associates, they should not respond to him for such advance. A payment by a stranger does not inure to the benefit of a debtor, and most certainly such payment would not operate to discharge the obligation of the debtor without evidence showing that it was the intention of the parties to have it do so. (*Clow* v. *Borst*, 6 John. 37; *Bleakly* v. *White*, 4 Paige, 654; *Mullen* v. *Eno*, 14 N. Y. 605.)

It is also claimed that the sum of $183,000 should not be brought into the account, because a mortgage upon certain property owned by the defendant corporation was given by it to Thomas M. King, trustee, to temporarily secure such advance. It cannot be disputed but that Garrett advanced such money individually under the agreement in aid of the joint enterprise, and is entitled to rely thereon for reimbursement. That he had other security for a part or the whole of such sum is no defense to his associates when called on to account. What the effect of such accounting and the enforcement of the judgment rendered thereon may be upon the continued existence of such mortgage, it is unnecessary now to determine. It is quite probable that, as all of the parties interested therein are parties to this action, it would operate as a satisfaction thereof.

It is also urged by the appellants that the plaintiffs do not come into court with clean hands, and that, therefore, a court of equity should deny them any relief. The result of such a view by this court would leave in the hands of the defendant Barnes a large amount of property, to the purchase of which he has contributed an insignificant amount. Such an objection comes

with an ill-grace from one who has deliberately planned to defraud his associates. We are gratified to say that the objection has no basis to rest upon, either in the findings of the court or the evidence upon which they were made.

We have also carefully examined the several rulings made on the trial in the admission and rejection of evidence and the refusals to make findings of fact and of law, and find no exception thereto of sufficient materiality or importance to disturb the judgment, and we are, therefore, of the opinion that the interlocutory judgment should be affirmed.

The exceptions taken upon the accounting and to the referee's report, and brought before us by Barnes' appeal from final judgment, alone remain to be considered. These exceptions relate to the allowance by the referee of the claim of Wiman for $70,000, of Garrett for $183,000, and of the sum of $12,500 debited to Barnes for an overcharge on account of the purchase of the Duncan property. The validity of each of these claims was passed upon and determined by the interlocutory judgment, and they were not open to question or objection before the referee. It is claimed that the overcharge by Barnes of the cost of the Duncan property, involved a question of fraud upon which he had the right of a trial by jury.

We are of the opinion that the trial of that question before the referee did not necessarily involve a charge of fraud against Barnes, as his liability thereon is predicated upon the circumstance that he had not, in fact, expended the moneys intrusted to him by his associates in the purchase of such property. Whether his omission to do so was occasioned by fraud, mistake, inadvertence or otherwise, was immaterial, as he was liable to account to his associates for the moneys remaining unexpended in his hands belonging to them, in either event. But we know of no rule of law requiring that charges of fraud, incidentally arising upon an accounting with reference to partnership transactions, shall be tried by a jury. It has been the invariable practice of courts of equity to try all questions arising before a referee in the stating of accounts between partners or joint owners, and necessarily involved in

such accounting since their origin, and we are referred to no authority questioning their power to do so.

The clause of the final judgment requiring the defendant corporation to appoint an annual meeting and proceed to an election of officers, cannot be questioned by the defendant corporation, as its appeal brings up only questions arising on the interlocutory judgment. So far as Barnes is concerned the judgment was fully warranted by the evidence and findings.

We are, therefore, of the opinion that each and all of the several orders and judgments appealed from should be affirmed, with costs.

All concur.

Orders and judgments affirmed.