OPINION OF THE COURT
 

 Bellacosa, J.
 

 In a proceeding under Business Corporation Law § 624, appellants seek to block petitioners from inspecting corporate books and records. They claim essentially that petitioners are not shareholders in LH Radiologists, P. C. The corporation and Dr. Rothman propose an inapplicable Statute of Frauds-type bar to the proceeding
 
 (see,
 
 Uniform Commercial Code § 8-319; Business Corporation Law § 503 [b]).
 

 Supreme Court confirmed a Referee’s finding that petitioners qualified as shareholders who were entitled to inspection of the corporate books and records. The Appellate Division affirmed that key feature of the case. It also modified the separate Supreme Court order to enjoin appellants from using corporate funds to pay for the defense of this proceeding. This Court granted leave to appeal and we now affirm.
 

 
 *528
 
 In 1984, petitioners were among 12 radiologists employed at Lenox Hill Hospital. They agreed to form two corporations: LH Radiologists, P. C. (LH), the corporate respondent-appellant here, and Lenox Hill Radiology Associates, P. C. (LHRA). LH was to provide radiology services at the hospital and to employ the radiologists, while LHRA was to provide similar services outside the hospital. The doctors agreed that they would be equal shareholders.
 

 Dr. Purnell left to his colleague, Dr. Rothman, the responsibility of attending to the formalities of incorporating the two multishare entities. Prior to formal incorporation, each of the physicians made capital contribution installments of $3,000 to form and start up both corporations. Dr. Patel, who is not a party to this proceeding, and Dr. Rothman made no initial payments. A total capital infusion of $61,000 from the radiologists was deposited to the "Purnell, Donovan Special Account.”
 

 To effectuate the agreement to form these corporations, Roth-man signed the certificate of incorporation for LH on behalf of the group of doctors. The certificate, filed with the Secretary of State on September 21, 1984, listed each of the 12 radiologists as original shareholders and authorized issuance of 100 no-par shares. Stock certificates were never issued to petitioners, however, nor do their names appear to be recorded in the corporate books.
 

 Some time between 1984 and 1988, Dr. Rothman, unilaterally and without authorization from any of his colleagues, caused all shares of LH stock, for which he had paid only $100, to be issued in his name alone. This was accomplished by backdating documents to the 1984 date of incorporation. His sole stock certificate was then recorded in the corporate records. The New York State Department of Education records, on the other hand, still carried petitioners’ names and Dr. Rothman among the list of 12 original LH shareholders as of 1993.
 

 In July 1991, Drs. Frank M. Purnell and Carmel Donovan demanded inspection of LH records because of concerns about disproportionate income and revenue distributions, as well as concomitant tax and financial consequences. Norton L. Travis had acted as counsel for the radiologists in creating the two professional corporations and, at this later time in 1991, was serving as counsel for LH Radiologists, P. C. Travis, on behalf of both the corporation and Dr. Rothman by implication, as the putative sole shareholder, rejected petitioners’ demand on
 
 *529
 
 . the ground that they were not shareholders of LH and, therefore, had no right to inspect its books and records.
 

 Drs. Purnell and Donovan next commenced this special proceeding under Business Corporation Law § 624 and New York’s common law to inspect the books of LH Radiologists, P. C. The matter was referred to a Special Referee, who concluded that petitioners’ contributions of funds constituted consideration for their shares and that they were shareholders of LH Radiologists, P. C.
 

 Supreme Court confirmed the Referee’s report, ratified the finding that petitioners were shareholders of LH, and held that they were entitled to inspect its books and records. The court also found that the nonissuance of shares was not dispositive of their shareholder status for purposes of this special proceeding. The court reasoned that since full payment for the shares was made and Dr. Rothman admitted the existence of the contract among the original group of radiologists to form the professional corporations and to become equal shareholders, a writing was not required
 
 (see,
 
 UCC 8-319 [a], [b], [d]). The court also correctly held that "[tjhis is not an action involving a contract to transfer stock, or a subscription agreement. Rather, it is a special proceeding brought to enforce rights as existing shareholders. Those rights are continuous and were breached when respondents rejected petitioners’ request to inspect the corporation’s books and records.”
 

 The Appellate Division unanimously affirmed (228 AD2d 360). The Court noted that Uniform Commercial Code § 8-319 did not apply to transfers of securities before issuance and that although Business Corporation Law § 503 (b) might be a "controlling statute, [it] applies only to prevent enforcement of an oral subscription by the corporation against the subscriber, which is not the case here”
 
 (id.,
 
 at 360, 361, citing
 
 Beck v Motler,
 
 42 AD2d 1020).
 

 Appellants LH Radiologists, P. C., and Dr. Lewis Rothman posit that the Uniform Commercial Code Statute of Frauds bars enforcement of oral contracts for the sale of securities including the issuance of shares, and that Business Corporation Law § 503 (b) may be asserted by LH Radiologists, P. C., to avoid an oral subscription for shares that petitioners are, in effect, seeking to enforce. Appellants rely on the absence of stock certificates in petitioners’ hands and names. They also allude to the potential financial advantages of single shareholder incorporation and the absence of a signed subscription agree
 
 *530
 
 ment. The applicability of the posed statutory provisions and the answers to appellants’ contentions requires careful classification of the transaction at issue within the framework of this special proceeding and in relation to the nature of the relief sought within it.
 

 These individuals entered into a preincorporation agreement among themselves to explore, organize and establish two collectively and equally owned professional corporations that would render radiology services. That agreement, among the individual radiologists, is to be distinguished from a contract for the sale of securities or a subscription, to which the corporation, either originally or ultimately, becomes a party. The original agreement here plainly differs from the subscription type, which does not become a contract until accepted by the corporation
 
 (see, 4
 
 Fletcher, Cyclopedia of Private Corporations §§ 1363-1365, at 21-24 [Perm ed]; Henn and Alexander, Corporations § 54, at 115 [3d ed]) or a contract for the sale or issuance of securities
 
 (see,
 
 Hawkland, Alderman and Schneider, Uniform Commercial Code Series art 8, at 383).
 

 Rothman personally breached this distinct agreement in relation to his colleagues and co-owners by converting LH Radiologists, P. C., from a corporation with multiple, equal owners into an entity mirroring himself as the only shareholder. He and LH now attempt to use that unauthorized transformation as a basis to deny the co-owners their right to inspect the books and records of the corporation. The inspection may well unveil what the petitioners suspect — that their status as shareholders has been compromised.
 

 This Court long ago put agreements of the type involved here in perspective:
 

 "[P]arties [may] make an agreement to form a corporation, and to provide therein what their respective interests in such corporation shall be * * *. A corporation cannot be formed without a preliminary agreement among parties proposing to form it, as to the mode and manner of doing so, and we see no objection to the parties forming such agreement, and intending to furnish the capital to establish it, from also agreeing that one of their number should subscribe for the whole stock intended to be taken by the associates, and from determining the interest which they should respectively take therein”
 
 (King v Barnes,
 
 109 NY 267, 288).
 

 
 *531
 
 In particular and in context, then, UCC 8-319 (a) states that a "contract for the sale of securities is not enforceable * * * unless * * * there is some writing.” As we have demonstrated, though, the agreement at issue was not for the sale of securities. Under the circumstances presented, therefore, the Uniform Commercial Code Statute of Frauds (§ 8-319) is inapplicable
 
 (see,
 
 Cary and Eisenberg, Corporations, at 1403 [6th ed] ["The concepts of purchase and sale have no useful purpose in the case of the creation or issue of shares, since the shares are not in existence which may be the subject of a purchase or sale”]).
 

 Next, we are satisfied that a subscription for shares is essentially an offer to buy shares of a corporation once they are issued
 
 (see, 4
 
 Fletcher, Cyclopedia of Private Corporations §§ 1363, 1363.10, at 21-22 [Perm ed]). Thus, Business Corporation Law § 503 (b) does not block a legal recognition of petitioners’ status as shareholders for purposes of this special proceeding. Section 503 (b) pertinently and distinguishably states that "[a] subscription, whether made before or after the formation of a corporation, shall not be enforceable unless in writing and signed by the subscriber.”
 

 We return, then, to the agreement between individuals to form a corporation, as in this case, which is neither a subscription for shares nor a contract with the resulting business entity. Since Business Corporation Law § 503 (b) establishes "a defense to the enforcement of an oral subscription
 
 by
 
 a corporation
 
 against
 
 a subscriber”
 
 (Beck v Motler,
 
 42 AD2d 1020, 1021,
 
 supra; cf., 4
 
 Fletcher, Cyclopedia of Private Corporations § 1365, at 24 [Perm ed] ["(T)he corporation, not being a party thereto, cannot maintain an action”]), it has no direct effect on this controversy. Thus, while subscribers may invoke the Statute of Frauds under Business Corporation Law § 503 (b) as a defense when a corporate entity seeks to compel payment based upon an oral subscription commitment, they may not use that section to block the legitimate entitlement to inspection of corporate books. Therefore, even were we to assume that the underlying agreement among the parties constituted a subscription arrangement, Business Corporation Law § 503 (b) would not defeat their status as shareholders for Business Corporation Law § 624 inspection purposes and rights
 
 (see, 4
 
 Fletcher, Cyclopedia of Private Corporations § 1480, at 184 [Perm ed], citing
 
 Beck v Motler,
 
 42 AD2d 1020, 1021,
 
 supra; see also,
 
 Business Corporation Law § 624;
 
 Matter of Ochs v Washington Hgts. Fed. Sav. & Loan Assn.,
 
 17 NY2d 82, 86, citing
 
 Sivin v Schwartz,
 
 22 AD2d 822).
 

 
 *532
 
 In sum, the record evidence supports the lower courts’ affirmed findings that petitioners are shareholders of LH Radiologists, P. C., certainly for purposes of this Business Corporation Law § 624 inspection proceeding. This is evidenced by the filed certificate of incorporation, the certified records of the State of New York, the substantial financial contributions toward the incipient enterprise, and the various shareholder meetings and memoranda among the parties. The omission of issuance of stock certificates to petitioners does not displace that array of evidence which supports shareholder status for these purposes
 
 (see, United States Radiator Corp. v State of New York, 208 NY
 
 144, 149-150;
 
 Buffalo & N. Y. City R. R. Co. v Dudley,
 
 14 NY 336, 347). The record strongly establishes conduct among the parties reflecting and in furtherance of status for all as equal shareholders.
 

 Overall, we are convinced that UCC 8-319, which applies to contracts for the sale of securities, and Business Corporation Law § 503 (b), which governs subscription agreements, present no. bar to petitioners’ recognized shareholder status and entitlement to inspection relief under Business Corporation Law § 624.
 

 As a closing point, this record also definitively supports the Appellate Division’s additional conclusion that appellants "may have pursued [their] position in bad faith”
 
 (see,
 
 228 AD2d 360, 361,
 
 supra; see, Meinhard v Salmon,
 
 249 NY 458, 468;
 
 King v Barnes,
 
 109 NY 267, 289-290). Thus, we agree that the Court justifiably foreclosed them from using corporate funds to defeat petitioners’ shareholder inspection proceeding.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.