## Edgcomb, Appellant, *v.* Clough.

*Statute of frauds—New York law—Executory contract for partnership in lands—Joint adventure—Standing timber—Contracts.*

1. An executory parol contract for a partnership or joint adventure in lands owned by one of the parties at the time the contract is made, is void under the New York statute of frauds, if the agreement involves a grant or assignment of the lands.

2. Such a contract is void if it involves the organization of a corporation to which the lands are to be conveyed to carry out the joint adventure.

3. A contract for the sale or transfer of standing timber is a contract for the sale of an interest in lands, and, to be valid, must be in writing under the New York statute.

4. Where two parties orally agreed that they would join in an adventure to effectuate the sale of the forest products on the lands of one of them through a corporation to be organized, and the prospectus of the corporation shows that the company was to

acquire the lands, the court will construe the contract as relating to the sale of standing timber to the corporation, and hold it void because not in writing.

5. The signing of the articles of incorporation by plaintiff is persuasive evidence that he thought the lands were to be conveyed to the corporation by defendant.

*Contract—Preliminary negotiations—Terms—Indefinite terms—Executory contract—Evidence—Parol evidence.*

6. The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself.

7. For the validity of an executory contract, the promise or agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite, and, if thus defective, parol proof cannot be resorted to.

8. Under the evidence in this case, held that no definite completed contract had been arrived at or entered into by the parties.

Argued May 22, 1922. Appeal, No. 267, Jan. T., 1922, by plaintiff, from judgment of C. P. Warren Co., March T., 1921, No. 13, for defendant, on demurring affidavit of defense, in case of Alfred E. Edgcomb v. L. S. Clough. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract. Before LINDSEY, P. J.

The opinion of the Supreme Court states the facts.

Judgment for defendant on demurring affidavit of defense. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*W. K. Swetland,* with him *J. Raymond Peck* and *Richard Hay Woolsey,* for appellant.—Two or more persons may become partners in buying and selling lands: Chester v. Dickerson, 54 N. Y. 1; King v. Barnes, 109 N. Y. 267; Traphagen v. Burt, 67 N. Y. 30; Babcock v. Read, 99 N. Y. 609; Hardin v. Robinson, 178 N. Y. App. Div. 724.

The cases uphold oral contracts where defendant owned all of the land prior to the contract, and plaintiff's contribution to the joint enterprise was that of services in selling and improving the property if necessary to make it suitable for sale, the expenses to be first deducted, defendant to receive a fixed sum out of the proceeds, the residue produced from a sale to be equally divided between plaintiff and defendant.

*J. E. Mullin,* of *Mullin & Woods,* with him *W. E. Rice* and *Edward R. Bosley,* of Buffalo, N. Y., for appellee.— Under the law of New York the contract was void: King v. Barnes, 109 N. Y. 257; Chester v. Dickerson, 54 N. Y. 1; Traphagen v. Burt, 67 N. Y. 30; Babcock v. Read, 99 N. Y. 609; Rauch v. Donovan, 126 App. Div. 52; Brown v. Leach, 189 App. Div. 158; Sanger v. French, 157 N. Y. 213; Bissell v. Harrington, 18 Hun. 81; Kirschmann v. Lediard, 61 Barb. 573.

OPINION BY MR. JUSTICE SCHAFFER, June 24, 1922:

Plaintiff brought an action of assumpsit against defendant, to recover the sum of $501,600, as damages for the breach of an alleged parol agreement to engage in a joint adventure concerning lands belonging to defendant, or the forest products thereon, situate in the State of New York. To plaintiff's statement of claim defendant filed a demurring affidavit of defense, upon which the trial court entered judgment in his favor; plaintiff appeals.

It is conceded the alleged parol contract was made in New York, concerns property located there, and is governed by the laws of that state. Two questions arise out of the contract as pleaded; first, is it within the statute of frauds of the State of New York; second, was a definite, completed, enforceable contract entered into, or was what transpired between the parties only negotiations looking toward a contract? The answer to both

these propositions by the common pleas was adverse to plaintiff.

The statement of claim sets forth that plaintiff was a lumberman of experience and defendant the owner of a large tract of forest lands, comprising about twenty-five thousand acres; that the parties plaintiff and defendant had prior negotiations concerning the sale of the lands, resulting in a written agreement to effect that purpose, terminated, however, by the expiration of the time limit fixed in it, which defendant refused to extend. The statement goes on to recite that after the termination of the written agreement, defendant urged plaintiff to undertake the development of the lands, pursuant to which request they met in the City of Buffalo on April 19, 1919. At this meeting, defendant submitted to plaintiff a written prospectus, made part of the statement of claim, containing a description of the lands and a proposition for the organization of a corporation to develop them. This prospectus recited the intention to organize the corporation "to acquire some 25,000 acres of hardwood forests" belonging to defendant, with an estimate of the timber thereon and of its value. It set forth that it was proposed to develop to the heart of the property a railroad twenty-two miles long, and to construct sawmills and other plants for the manufacture of the timber; to finance the enterprise the prospectus outlined a plan for an issue of $1,000,000 7% cumulative preferred stock and $2,000,000 in common stock in payment for the property. After stating that this prospectus was submitted by defendant to plaintiff, the statement proceeds with the averment that at that time, on April 19, 1919, it was "orally agreed by and between plaintiff and defendant that defendant *would join* in a joint adventure with the plaintiff, to effectuate the sale of the forest products situate upon the hereinbefore described lands and set forth in the said written prospectus submitted by the defendant, either in the open market or to third parties and *would join* in whatever development of the

property should become necessary to carry out this purpose; the lands hereinbefore described the defendant orally promised and agreed should be used and developed for the best interests and purposes of the said joint adventure." This oral understanding manifestly contemplated a development as outlined in the prospectus, through a corporation to be organized to acquire the lands which were to be conveyed to it and to be paid for as the prospectus provided, by the issue of common and preferred stock. After the matter above quoted, the statement proceeds with the allegation, that "plaintiff, relying upon the said agreement of the defendant," orally agreed to use his skill and experience for the purpose of accomplishing the development of the property and the sale of the forest products thereon, and sets forth that the sums realized from the joint adventure should be distributed, $1,600,000 to defendant, and all further sums, accruing after deducting necessary expenses, to be divided equally between plaintiff and defendant. The statement further recites that it was orally agreed that, to "carry out the *development of the lands*" and effectuate the sale of the forest products, a corporation should be organized "upon such a basis of division of the common and preferred stock" as that the defendant should receive $800,000 of preferred stock, and $800,000 to be derived from a proposed bond issue to be made by the corporation, and that plaintiff and defendant were each to receive one-half of the common stock of the corporation (without stating what was to be the amount of the common stock unless it is to be inferred that it was to be the amount fixed in the prospectus, $2,000,000) and that after the formation of the corporation the parties were to coöperate in the placing of bonds of the corporation to the amount of $1,000,000. It is alleged that the division of the common stock fixes the right of the parties to share equally in the profits of the joint adventure.

The allegations set forth in the statement of claim, as above summarized, do not indicate a definite fixed con-

tract between the parties, but that negotiations were being carried on between them along the lines of the prospectus. This is further evidenced by a letter, made part of the statement of claim, written on April 21, 1919, two days after the meeting in Buffalo, by defendant to plaintiff's attorney, in which copies of the prospectus were enclosed, with the request for any further suggestion relative to it, wherein it was stated that a telegram had been received from third parties, asking for an interview in regard to the timber tract, to which defendant replied that he was *"negotiating* with other parties." The statement of claim follows the recounting of what took place at the interview in Buffalo, with the averment that defendant had caused articles of incorporation for a new company to be prepared, which were forwarded to plaintiff and his attorney for execution. These articles of incorporation are attached to the statement of claim, made part of it and show the main purposes for which the corporation was to be formed, to be to purchase, lease or otherwise acquire lands and timber lands. It is set forth in the statement that it was agreed plaintiff should employ an engineer and go upon the property in company with defendant to work out the best means of transportation of the products of the proposed corporation to market, either by the construction of a railroad or a flume, and that plaintiff employed an engineer and with defendant proceeded to an examination of the property to ascertain the best means of transportation. It is stated that plaintiff, relying upon the agreement entered into on April 19th "and the purposes expressed in the articles of incorporation of the proposed corporation duly executed and accepted by the plaintiff as aforesaid" and to carry out the purposes of the joint adventure, expended money and time in placing the forest products situate upon the property of defendant before prospective purchasers for the purpose of "securing a market for the said products when said property should be developed," and as a result that ar-

rangements were made for the sale of the pulp wood on the property and of the hardwood at certain prices mentioned, "said sales to be contingent upon the development of the said property and means of transportation by the new corporation" in accordance with the terms and conditions of the covenants and agreements between the parties; that, at a subsequent meeting, plaintiff was ready and willing to carry out his agreement, to complete the organization of the company, and to coöperate with defendant in placing the bonds, to begin the work of development of the property and to put the products thereon upon the market but that, upon request of defendant to proceed with the organization of the corporation, the placing of its bonds, the development of the property and "the sale and delivery of the soft and hard woods thereon," defendant refused to carry out the terms of the agreement.

In his statement of claim, plaintiff pleads the law of the State of New York governing transactions in and concerning real property, which he avers to be as follows: "An estate or interest in real property other than a lease for a term not exceeding one year, or any trust or power over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed of conveyance in writing subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereto authorized by writing" (Consolidated Laws of State of New York, Statute of 1909, chap. 50, section 242); and avers that the decisions of the court of last resort of the State of New York in cases arising under that statute have established certain rules of law in that jurisdiction, among others, (a) "That a parol agreement to form a partnership, or for a joint adventure with respect to personal property or a specific parcel of land, title to be taken or held in one of the parties on the joint account to be sold and profits divided is not void by the

statute of frauds as creating an interest in real estate, and that it is immaterial whether the agreement constituted a partnership in the technical legal sense, or whether it was a joint enterprise, it is to be enforced upon principles applying to partnership transactions and need not be in writing," and (b) "That it is doubtful whether the statute of frauds has any application to oral partnership agreements, and it certainly has none when the agreement has been wholly or partially executed," citing certain cases as authority for the legal rules above stated. In their printed brief, appellant's counsel do not limit consideration to the cases cited, but urge that all decisions of the courts of the State of New York bearing on the question shall be considered.

Plaintiff concludes his statement by a claim for damages caused by defendant's refusal to carry out the alleged agreement, resulting from a loss of profits which he avers would have accrued to him under it amounting to $500,000, and for a further sum of $1,600, moneys expended by him in carrying out its provisions.

Appellant's position is that he and the defendant entered into a joint adventure to sell the forest products on the lands of the latter, that no interest in land was intended to pass from the defendant to the plaintiff, who could only enforce his claim against that portion of a fund of money to be derived from their sale representing the net profits therefrom; that the correct test to be applied to determine the validity or invalidity of the contract pleaded is to seek whether or not an interest in the land is to pass; that, having applied this test, the contract will be upheld as valid or declared invalid whether or not the particular interests in land were acquired by the defendant before or after the contract was entered into; and that under the law of the State of New York as declared in Chester v. Dickerson, 54 N. Y. 1; Traphagen v. Burt, 67 N. Y. 30; Babcock, Assignee, v. Read, 99 N. Y. 609; King v. Barnes, 109 N. Y. 267; Rauch v. Donovan, 126 App. Div. 52; Harden v. Robinson, 128 App.

Div. 724; Brown v. Leech, 189 App. Div. 158; Sanger
v. French, 157 N. Y. 213; Bissell v. Barrington, 18 Hun.
81, two or more persons may become partners in buying
and selling lands, and that such an agreement is not
affected by the statute of frauds, for the reason that
the real estate is treated and administered in equity as
personal property for all the purposes of the partner-
ship, and that the question of prior ownership of the
land by one of the parties to the adventure is not con-
trolling to keep the contract within the statute.

Appellee's contention in this respect is that the cases
relied upon by plaintiff do not sustain his contention,
that while some of them uphold parol contracts of
partnership or joint adventure for dealing in lands, none
sustains an executory contract to deal in lands owned
by one of the parties at the time the parol agreement was
made, and that such an executory parol contract for a
partnership or joint adventure in lands owned by one of
the parties at the time the contract was made, is void
under the statute. Our study of the New York cases
construing its statute of frauds, leads us to the con-
clusion that appellee's position is the correct one on
this feature of the case. Speaking of the New York
statute in Hagedorn v. Lang, 34 N. Y. App. Div. 117,
118, it was said: "The purpose of the statute of frauds
is sufficiently indicated by its title. It is a statute
against frauds. It was designed to prevent litigation
over oral agreements, where the terms are always de-
pendent upon the uncertain and varying memory of wit-
nesses. This evil was to be remedied by the reduction of
the terms of the contract to writing, so that the parties
might not misunderstand the particulars of the contract
which they were making; that no man might be induced
to enter a court of justice to vex the peace of his oppo-
nent without clear and definite evidence of the terms of
the contract which form the ground of action, equally
accessible to both parties and to the court; and that

perjury might not be invited to sustain a claim which never had any real existence."

The court below correctly distinguished between oral agreements to form partnerships to deal in lands, not within the statute, and oral agreements affecting lands, when it said: "However, a partnership agreement not within the statute of frauds, because by it no estate or interest in lands is created, granted or assigned, must not be confused with such an agreement which does involve the creation, granting or assigning of such an estate or interest," and pointed out the difference in the two classes of contracts as expressed in the language of Pounds v. Egbert, 117 N. Y. App. Div. 756, where it was said: "An agreement to form a copartnership to deal in lands does not, therefore, involve any element violative of the statute of frauds; but if such agreement also provides for a conveyance of real property from one partner to another or to the copartnership, it then provides for the creation of an estate or interest in lands and comes directly within the statute of frauds. The ground upon which partnership agreements to deal in land have been sustained, as well as the plain words of the statute, requires the conclusion that the mere fact that an agreement happens to provide for a copartnership will not save it from the statute of frauds if it also attempts to create, grant or assign an estate or interest in lands."

In Goldstein v. Nathan, 158 Ill. 641, where the parties had agreed that they would enter into a joint adventure with reference to two lots, one owned by each of the parties, it was said (pp. 646, 647): "By the terms of the agreement the rights acquired, by virtue of the deed, by the appellee to his lot were sought to be qualified and limited. By this agreement, in consideration of appellant agreeing to divide with appellee the profits made by appellant on the sale of his lot, appellee was to divide with appellant the profits on his lot when sold. The contract was executory. Both sales were made, and it is sought to enforce the agreement as against the appellee.

The contract was not in writing. The agreement affected
real estate, the title to which had been acquired by ap-
pellee before the agreement. If the appellant had any
interest in the lot it was by virtue of the agreement re-
lied upon, and was by parol, and would be within the
statute......Any interest in the land or the proceeds
growing out of the alleged contract cannot be severed
and made to apply to the profits, as distinct from the
land itself. If the appellant acquired an interest in ap-
pellee's lot by virtue of his contract, it attached upon
the contract being made......It is only by having ac-
quired an interest in the lot that he could have acquired
an interest in the proceeds of the sale."

It is conceded by appellant that if the contract pleaded
"calls for a conveyance from the defendant to the plain-
tiff of an interest or estate in real property, the contract
is void and cannot be enforced, as it is in violation of the
statute." While what was contemplated was not a con-
veyance directly from the defendant to the plaintiff,
what was in mind was a conveyance of the defendant's
land to a corporation to be formed, and this would be,
equally with a direct conveyance to plaintiff, in violation
of the statute, which provides that "an estate or interest
in real property......cannot be created......unless by
......a deed or conveyance in writing subscribed by the
person creating it." The statute is designed to prevent
frauds and perjuries. It would be nugatory if it could
be subverted by oral testimony that an agreement had
been entered into to convey land to a corporation which
the court would enforce, whereas it would not enforce
such a contract between individuals. We agree with the
observation of the court below, "The defendant was to
part with his land or an interest therein for the benefit
of plaintiff to the extent he was to share in the profits
and by the agreement an interest in the land passed to
plaintiff from the defendant, or else nothing passed or
was acquired by the plaintiff on which he could found a
demand." "An agreement to place the title to property

which one party owns, in a partnership which was to be formed in order to develop the land and sell it at a profit, is for the sale of the land and within the statute": Rowley, Modern Law of Partnership, section 218, p. 227.

The term "forest products" used in the statement of claim can only mean standing timber and standing timber is an interest in land under the New York statute. The court of last resort in New York held in Green v. Armstrong, 1 Denio 550 (16 New York Common Law Reports 890): "An agreement for the sale of growing trees, with a right to enter on the land at a future time and remove them, is a contract for the sale of an interest in lands, and to be valid must be in writing." In that case, the court said: "By the statute, a contract for the sale of 'any interest in lands' is void unless in writing. The word 'land' is comprehensive in its import and includes many things besides the earth we tread on, as waters, grass, stones, buildings, fences, trees and the like; for all these may be conveyed by the general designation of land......Standing trees are therefore part and parcel of the land in which they are rooted, and as such are real property......It is not material and does not affect the principle that the subject of the sale will be personal property when transferred to the purchaser. If, when sold, it is, in the hands of a seller, a part of the land itself, the contract is within the statute. These trees were part of the defendant's land and not his personal chattels. The contract for their sale and transfer, being by parol, was therefore void." A contract for standing timber on a tract of land to be taken off at discretion as to time is an interest in land and within the statute of frauds and perjuries, the transmission of which must be by writing: Pattison's App., 61 Pa. 294; McClintock's App., 71 Pa. 365; Mahan v. Clark, 219 Pa. 229. "Growing trees or standing timber are a part of the realty. As a general rule, compliance with the statute of frauds is essential to pass title to such trees, or to create an estate therein for a term longer than that specified in the stat-

ute, or to render enforceable an executory contract for their sale": 27 Corpus Juris 197.

While appellant's counsel ingeniously argues that the agreement between the parties contemplated not the purchase of the land but the marketing of the forest products thereon, and therefore was not within the statute, we cannot so construe the averments of the statement of claim and the papers annexed to and made part of it. To our minds, they convey the clear impression that defendant's lands were to be conveyed to the corporation; that being so, the oral agreement to so convey them is indisputably within the statute. The articles of incorporation not only show that the defendant thought the corporation to be created was to acquire his lands but that the plaintiff signed them, which is persuasive at least to the conclusion that he thought the lands were to be conveyed to the corporation.

Furthermore, the circumstances averred in the statement of claim show, not that there was a definite completed agreement upon which the minds of the parties had met, but that they were negotiating as to the development of the property and that the final understanding between them was something which was to be worked out through the medium of the corporation to be created. The statement does not aver that plaintiff and defendant had entered into a joint adventure, but that they "would join" therein, thus giving the idea not of an agreement consummated but of one subsequently to be reached. There is no allegation in the statement that they intended the agreement to be operative before the execution of the articles of incorporation. The prospectus shows that what was contemplated was the acquiring by the corporation of defendant's lands. This prospectus was in the minds of the parties at the time of their meeting on April 19th, when the contract is alleged to have been entered into, and subsequent thereto, as appears by the letter of April 21st, asking for suggestions relative to it. As before stated, this letter shows

that what was transpiring between the parties was negotiations on the basis of the prospectus, not a completed contract; when defendant came to take the first step toward reducing the negotiations to certainty, he did it by preparing the articles of incorporation for the company, whose purpose was "to purchase, lease, or otherwise acquire" his lands.

In order that a contract may be enforceable, its terms must be certain and explicit and not vague or indefinite: Wilson v. Pennsy Coal Co., 269 Pa. 127, where it is said: "An arrangement of terms in contemplation of a written contract is not a perfect agreement, upon which an action can be maintained. To produce this effect, it must be shown by the acts or declarations of the parties that they intended the agreement to be operative before execution and without regard to the writing." "In order that a contract may be enforceable the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite, and, if thus defective, parol proof cannot be resorted to. The contract must be certain and unequivocal in its essential terms either within itself or by reference to some other agreement or matter. In addition to a definite promise, the subject-matter of the agreement must be expressed in such terms that it can be asserted with reasonable certainty. A contract which is so uncertain in respect of its subject-matter that it neither identifies the thing by describing it, nor furnishes any data by which certainty of identification can be obtained, is unenforceable...... Courts can neither specifically enforce contracts nor award substantial damages for their breach when they are wanting in certainty": 6 Ruling Case Law 644. The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agree-

ment to be entered into. To be final, the agreement must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement: 13 Corpus Juris 289. "If the contract was not full and complete,—if something remained to be agreed upon, it is not to be said to be a complete contract": Zoebisch v. Rauch, 133 Pa. 532, 537. There must be prescission in the terms of a contract if it is to be enforced: Ogden v. Phila. & West Chester Trac. Co., 202 Pa. 480; Smith v. Crum Lynne Iron & Steel Co., 208 Pa. 462. An indefinite or uncertain contract cannot be enforced. The terms of a contract must be fixed and complete or there can be no recovery on it: Butler v. Kemmerer, 218 Pa. 242. What was said by us in Beaver v. Slane, 271 Pa. 317, as to the indefiniteness of contracts, and because of such indefiniteness, their lack of enforceability, is pertinent here. "For the validity of an executory contract, the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite, and, if thus defective, parol proof cannot be resorted to": Varney v. Ditmars, 217 N. Y. 223.

For the reason that no definite completed contract had been arrived at or entered into by the parties, and because, if such a contract as is set up had been entered into, it would have been void under the New York statute of frauds, we are compelled to hold plaintiff not entitled to recover and that the court below properly sustained the demurrer.

The judgment is affirmed.