## Bunting Glider Company v. Thornton-Fuller Company

*Wolf, Block, Shorr & Solis-Cohen,* for plaintiff.

*G. A. Gleeson,* for defendant.

PARRY, J., December 15, 1945.—The plaintiff brought suit to recover damages from the defendant for breach of contract. The statement of claim referred to a written agreement under which the plaintiff had undertaken to supply metal tool boxes to the defendant at an agreed price. It then set forth that the plain-

tiff had ordered the material and proceeded to manufacture the boxes but by reason of delays in the delivery of material by its suppliers was unable to make deliveries to the defendant, who attempted to cancel the contract. That the plaintiff declined to agree and disputed the defendant's right to cancel. That in consequence negotiations were entered into by the parties and an oral contract was made providing that the plaintiff would agree to a cancellation of the written agreement and make no further claims thereunder and the defendant would assume the obligation to see to it that the new supplier of the boxes would purchase from the plaintiff all raw materials on hand or on order necessary to manufacture the boxes described in the written agreement at a price which would let the plaintiff out without loss and further would take over from the plaintiff its outstanding subcontracts in connection with the boxes. The value of the materials was stated to be $16,312.38 and the plaintiff's obligations to subcontractors as $3,917.46, a total of $20,-229.84, which amount is claimed for breach of the oral agreement.

There was no attempt to prove such a contract at the trial. It was not pretended that any arrangement was made that would save the plaintiff harmless but on the contrary Goldberg, the president of the plaintiff corporation, expressly asserted that he agreed to absorb all other losses and call it off if the defendant would take the material off his hands. He testified that he called at the defendant's plant, interviewed two of its officials, Miller and Burgess, and requested them to reinstate the canceled contract. This was refused except at a lower price per box which Goldberg in turn declined to accept. Goldberg was then informed that the Thornton-Fuller Company proposed to let the contract for the boxes in Chicago; whereupon he said the following conversation took place:

"I said, 'Well, I'll tell you what I'll do: You take all the material off our hands; I'll absorb the loss on the dies and overhead, everything else, just take the raw material that we bought and what is coming in; give it to the new supplier and I'll call it off'. He (Miller) said, 'Fine, Mr. Burgess, make arrangements'. I walked out . . . Mr. Burgess took me as far as the elevator, or the door, and that was the end. Mr. Burgess said, 'I'll get in touch with these people', right in Mr. Miller's presence, the Chicago company, 'and we'll see that the merchandise is removed because the other man is going to get the contract'."

As observed by the court in Seiss v. McClintic Marshall Corp., 324 Pa. 201, 204: "The contract here set up is so lacking in precision, so indefinite and vague that nothing certain about it can be formulated."

Was the material to be taken over at Philadelphia or forwarded or diverted to Chicago? What price was to be paid for it? When were deliveries to be made? On these essential elements of a bargain the alleged agreement is silent and there is nothing from which the undertaking of the parties and their legal liability could be determined by a jury.

Furthermore, it is obvious that the transaction was incomplete for Burgess was told to make "arrangements". Unless he was to arrange details of price, delivery and the like there would be nothing to arrange and certainly nothing in connection therewith was ever agreed upon.

It is apparent that if the conversation relied upon constitutes a contract it is quite different from that set up in the statement of claim, but there appears to be one point of similarity. In the contract pleaded the plaintiff's promise is to agree to a cancellation of the written contract and make no claim thereunder. In the arrangement proven it is said to be to absorb the loss and "call it off". We cannot refer this to anything except the written contract for as it was the only prece-

dent undertaking there was nothing else to "call of". But it was conceded at the trial and indeed cannot be disputed that the defendant was entirely justified in canceling the written contract, for in it the right to cancel is reserved if deliveries were not made on the stipulated dates and it is admitted that no deliveries were ever made. An agreement to call something off that has ceased to exist and bear a loss that plaintiff was bound to bear, since it was due to its own default, affords no consideration for the defendant's undertaking for it is merely the surrender of or forbearance to assert an invalid claim.

That an alleged contract not supported by consideration is nonexistent requires no citation of authority and it is well established that in cases of vague or incomplete agreements judgment will be entered for the defendant as a matter of law.

In McNeely v. Bookmyer, 292 Pa. 12, the Supreme Court affirmed a judgment entered n. o. v. by the court below in an action upon an alleged oral contract to repurchase stock, saying:

"In the alleged agreement to repurchase, as plaintiff testified to its terms, there was nothing said about the price to be paid for the stock by the defendant . . . 'Price is as essential as any other of the terms of a contract, and without this agreed upon no contract exists.' "

In Butler v. Kemmerer, 218 Pa. 242, the court in entering judgment n. o. v. for the defendant said:

". . . our concern is as to the incompleteness of the alleged contract. To form the basis of a legal obligation, an offer must be so complete that upon acceptance an agreement is formed which contains all the terms necessary to determine whether the contract has been performed or not. Price is as essential as any other of the terms of a contract, and without this agreed upon no contract exists. An indefinite or uncertain contract cannot be enforced."

In Edgcomb v. Clough, 275 Pa. 90, judgment for the defendant entered on a statutory demurrer was affirmed on the ground that a contract might not be enforced if its terms were not certain and explicit but vague or indefinite.

While it is true that whether there is a contract and what that contract may happen to be is a question for the jury, this implies that there must be evidence upon which a contract may be predicated.

In Evans v. Ely, 13 F.(2d) 62 (C. C. A. 3d), the plaintiff sued upon an alleged oral contract to purchase stock. Affirming the court below the circuit court said:

"But the plaintiff urges that the existence of a contract is a matter not for the court but for the jury to decide. That is true only when there is evidence substantial enough, if submitted, to sustain an affirmative finding by the jury."

Viewed in another aspect the same result appears. This transaction can only be one of two things. It is either an attempt to vary a written instrument by oral testimony or, as asserted in the plaintiff's brief, it is an ordinary agreement of sale. If the former, the attempt must fail as obnoxious to the parol evidence rule. If the latter, it contravenes section 4 of The Sales Act of May 19, 1915, P. L. 543, which provides:

"A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

As we think a verdict for the defendant was properly directed, the motion for a new trial is overruled.