**Royal Store Fixture Co. v. Bucci**

*Jay G. Ochroch,* for plaintiff.
*Joseph N. Bongiovanni, Jr.,* for defendant.

MEADE, J., April 16, 1969.—Plaintiff instituted this action to recover lost profits of $3,586.75 resulting from defendant's breach of contract. Defendant had purchased a lot in Beach Haven Park, N. J., with the intention of erecting thereon a combination delicatessen and restaurant. He made contact with plaintiff's sales manager, as a result of which, the parties signed a typewritten document providing as follows:

"In consideration for services rendered and to be rendered by Mr. Samuel Solow, executive of Royal Store Fixture Company, 847 North Broad Street, Philadelphia, Pa. in connection with the preparation of plans and specifications for your new store.

"I,

"agree to purchase the store fixtures and refrigeration equipment required for same from Mr. Samuel Solow of the Royal Store Fixture Company at prices competitive with other Manufacturer's Equipment of equality and specifications."

The writing was dated January 30, 1964, and was signed by Solow. Under his signature was his typewritten name followed by "Royal Store Fixture Company." Under the signatures was the following handwritten note: "If in the event plans and specks are not used due to lack of time for completion for this sea-

son, there will be no charge for same." This ink addition was signed by "S. Solow."

Subsequent to the signing of the foregoing document, plaintiff submitted several layouts for the type and location of the equipment deemed by plaintiff to be necessary for the contemplated operation. Plaintiff also submitted several lists of types of equipment with prices, but without specifications as to make and model; the first list dated February 5, 1964, totaled $29,004; a second one dated February 11, 1964, totaled $14,347; a third dated February 12, 1964, totaled $19,100. Defendant also received bids from other companies and finally purchased the required equipment from a competitor of plaintiff.

Plaintiff's theory of the case is that Bucci was bound by a valid and subsisting agreement to buy all his store fixtures and equipment requirements through plaintiff at competitive prices, that the prices submitted by it were competitive, and that defendant's purchase of his requirements elsewhere constituted a breach of contract entitling plaintiff to recover as damages its loss of bargain. Defendant argues, on the other hand, that the document signed by the parties was too vague and indefinite to be a binding contract, and even assuming that it was a binding contract, plaintiff has failed to establish his damages. After carefully reviewing the document upon which plaintiff bases its cause of action and the notes of testimony of the trial of the case, the court is of the opinion that defendant's defenses are valid and that plaintiff cannot prevail.

The Uniform Commercial Code of April 6, 1953, P. L. 3, (UCC) section 2-204, 12A PS §2-204, provides that "(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and

there is a *reasonably certain basis for giving an appropriate remedy.*" (Italics supplied)

While the UCC has radically modified the early law of contracts and sales in many respects, it has retained in modified form the theory that the courts cannot give any relief unless the agreement sets forth with sufficient specificity the essential duties of the parties. The commentary to the code contained in 12A PS, p. XL, points out that, as to contract rules "The prime test is simply that the parties intended to make a contract and that 'there is a reasonably certain basis for giving an appropriate remedy'. It is specifically provided that the price, particulars of performance, the time for performance and the duration of the contract must not necessarily be fixed by the agreement of the parties." The authors of the code itself point out in the comment to section 2-204 that "The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement, but their actions may be frequently conclusive on the matter despite the omissions."

A typical statement of the pre-code law on the point of definiteness of essential terms is contained in Edgcomb v. Clough, 275 Pa. 90 (1922):

"In order that a contract may be enforceable, its terms must be certain and explicit and not vague or indefinite. . . 'An arrangement of terms in contemplation of a written contract is not a perfect arrangement, upon which an action can be maintained. To produce this effect, it must be shown by the acts or declarations of the parties that they intended the agreement to be operative before execution and without regard to the writing.' 'In order that a contract may be enforceable the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague

nor indefinite, and, if thus defective, parol proof cannot be resorted to. The contract must be certain and unequivocal in its essential terms either within itself or by reference to some other agreement or matter. In addition to a definite promise, the subject-matter of the agreement must be expressed in such terms that it can be asserted with reasonable certainty. *A contract which is so uncertain in respect of its subject-matter that it neither identifies the thing by describing it, nor furnishes any data by which certainty of identification can be obtained, is unenforceable. . . . Courts can neither specifically enforce contracts nor award substantial damages for their breach when they are wanting in certainty' . . . "* (Italics supplied.)

While the code has radically changed some of the foregoing requirements, it has not obviated the common-law requirement that the subject matter must be at least definite enough to allow the court either to specifically enforce the agreement or to award appropriate damages for its breach.

The subject matter in the case sub judice is described only as "store fixtures and refrigeration equipment." This description is wholly inadequate to give the requisite clarity to the agreement so as to make it an enforceable contract. Plaintiff's principal witness testified that "There are many, many makes and many, many sizes, and I can't compare an item that Royal would have sold, with an 'X' item that it knows nothing of." We have examined carefully the exhibits in this case, especially the bids submitted by plaintiff. The bid in the form of a letter dated February 5, 1964, in the amount of $29,004, contained unspecified equipment totaling $12,610. As to this portion of the bid, make, model, and in some cases, dimensions, were not specified. The bid in the form of a purchase order dated February 12, 1964, in the amount of

$19,100, contained unspecified equipment totaling in excess of $13,400. Plaintiff testified under cross-examination that the layout plans, the bids and the letters listing the equipment were the only physical evidence of his work and that he had not prepared any specifications at all. Under these circumstances, to hold that the above-recited language was sufficient to identify the subject matter of the agreement of the parties would be to reduce the already liberal standards of the code to unrestrained babblement.

Nor do we believe that the price of the unspecified store fixtures and refrigeration equipment could ever be reduced to reasonable certainty. While section 2-305 of the UCC dealing with "open price term," has been construed to call for a reasonable price (Kuss Machine Tool & Die Co. v. El-Tronics, Inc., 393 Pa. 353 (1958) ), this may not necessarily be the same as the "competitive prices" called for in the writing. The testimony is clear that the parties left open the term of price, because it was to be agreed upon at a later date. Whether the court could arrive at a "reasonable" price is doubted in view of plaintiff's testimony on that question. In explaining the overall price on the bid, Mr. Solow testified that ". . . this is normally only the beginning of a sale, because then you sit down with your customer, and then he starts to haggle, and before you know it, your fourteen thousand three forty-five price might be down to thirteen thousand three hundred." Later, he stated that, at the time the writing was signed, he did not commit his company to the $20,000 amount defendant had available for "store fixtures and refrigeration equipment," but that "we would try to get the price down to Mr. Bucci's twenty thousand dollars."

Even assuming, however, that the writing was sufficiently certain to be an enforceable agreement and that it was breached by defendant, we think that

plaintiff has failed to establish his damages. Plaintiff has apparently elected to proceed under section 2-708(2) for his loss of profit on the sale. Section 2-708 (2) provides that:

"If the measure of damages provided in subsection (1), [damages determined by computing difference between the contract price and the market price] is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or *proceeds of resale*." (Italics supplied; bracketed material not in original.)

We find nothing in the notes of testimony that approaches compliance with the burden of proof imposed by this section. Plaintiff must not only prove the contract price or the prevailing market price, but also its cost. Without both of these factors, the loss of profit is unascertainable. Many pages in the notes of testimony were devoted to attempts by both counsel to elicit testimony on the computation of cost. Mr. Solow testified that this item was taken from a catalogue which contained the cost of the fixtures and equipment, including installation; that a discount of unknown amount was deducted and that added to this balance were costs of delivery, overhead, profit and the salesman's commission. The catalogue was not introduced into evidence, nor did any executive testify as to cost factors, profit margin, installation or discounts. Solow admittedly had been out of the employ of plaintiff for over five years. Although he testified that the items listed in the bids were in his company's stock, he had no idea whether they were sold later, or if sold, what price was received. As previ-

ously pointed out, the code has not abolished the seller's duty to take reasonable action to mitigate his damages upon breach by the buyer. Under these circumstances, we think the testimony of plaintiff's principal witness is of little value as to damages. We think these omissions constitute a fatal defect in plaintiff's proof of damages under section 2-708(2).

For the foregoing reasons, we hold that the instrument signed by the parties was not an enforceable agreement and that even if it were, plaintiff failed to sustain its burden of proof as to its damages. Judgment must be entered in favor of defendant and against plaintiff.