**Leonard DOBBS, Plaintiff,**

v.

**VORNADO, INC. and Morris Plains Leasing Corp., Defendants.**

**No. 80 Civ. 1304.**

United States District Court, E.D. New York.

Dec. 8, 1983.

where the material is entirely unrelated to the matter in controversy. *See Mitchell v. Hart*, 41 F.R.D. 138, 143 (S.D.N.Y.1966).

Winer, Neuburger & Sive, New York City, for plaintiff.

Finley, Kumble, Wagner, Heine & Underberg, New York City, for defendants.

## ORDER

GLASSER, District Judge:

Following a trial by jury a verdict was rendered for the plaintiff after the defendant's motion for a directed verdict was denied. The defendant now moves pursuant to Rule 50(b) of the Fed.R.Civ.P. for a judgment notwithstanding the verdict and for such other relief as the court may deem proper. The plaintiff moved, pursuant to Rules 59(e) and 60 of the Fed.R.Civ.P. to amend the judgment to include prejudgment interest.

The defendant Morris Plains Leasing Corp. ("MPLC") is a wholly owned subsidiary of the co-defendant Vornado, Inc. ("Vornado") and owned a leasehold interest in approximately 34 acres of land in Morris Plains, New Jersey. Since 1976 that property was improved by a structure which housed a supermarket, a liquor store, and a Two Guys store. A gas station was also operated on the property. Parking facilities were also available. In or about that year the defendant contemplated developing the property further and had discussions with the plaintiff in that regard which extended from some time in 1977 through the early part of 1980 or the latter part of 1979. The main focus of those discussions was the expansion of the existing improvements and the development of the shopping facilities into an enclosed mall. Beyond this, the parties differed sharply as to what ensued factually and as to the legal implications that flowed therefrom. Their respective views were vigorously contested and may be summarized as follows.

The plaintiff contended that in or about August 1977 the parties agreed, in writing, that plaintiff would develop the property to realize stated objectives. Encouraged and authorized to proceed, the plaintiff invested time and money in assembling and organizing the various components that go into the realization of an enclosed shopping center mall. He claimed that he conducted numerous feasibility studies, gathered the

necessary and relevant information, pursued financing, architectural, engineering, construction and legal services necessary for such a project and procured tenants for the enlarged facility. He estimated his expenditure in time and money towards that end to be at least $250,000.

The plaintiff also contended that in or about December 1978 he and MPLC entered into a joint venture agreement which, he claimed, the defendant breached causing him to suffer damages of at least $8,000,000.

The defendants contended that no agreement was ever entered into between the parties and that if such an agreement did exist, it did not satisfy the requirements of the Statute of Frauds. The defendants contended that the plaintiff was not ready, willing or able to perform the conditions, the satisfaction of which were precedent to any agreement with them and that he did not, in fact, perform those conditions. Finally, the defendants contended that the time and money expended by the plaintiff were not by virtue of any agreement, nor in reliance upon any representations made by the defendants either by words or conduct. Those expenditures, they claimed were in the nature of an investment he made in the hope of inducing the defendants to enter into an agreement.

At the conclusion of the presentation of their positions and arguments, the issues were presented to the jury in two stages. They were first instructed on the considerations that were relevant and essential to the creation of a joint venture agreement and to the breach thereof and directed to answer the questions which were submitted to them (Court Exhibit # 1). Those questions, in essence, were:

1. Did the parties enter into a joint venture agreement to develop a shopping mall? The jury found that they did.

2. Having found a joint venture agreement, did the defendants terminate or breach the joint venture? The jury found that they did.

Mindful of the problems that would arise from such a general verdict, the jury was directed to respond to four additional questions that were geared to the Statute of Frauds (Court Exhibit # 4). Those questions were:

1. Was the joint venture agreement between the parties entirely oral? The jury said "no."

2. Was the joint venture agreement between the parties embodied entirely in a writing? The jury said "no."

3. Was the joint venture agreement between the parties partly oral and partly in writing? The jury said "yes."

4. If the answer to either 2 or 3 is "yes," identify the writings to which you refer. The jury referred to "Exhibits 15, 15–A, 16, 18, 25, 26, 52 and 31, plus Joint Venture Agreements—Exhibits A, B, C and D.

Having determined the issue of liability, evidence was then introduced on the subject of damages. The jury returned a verdict for the plaintiff, awarding him out-of-pocket expenses totalling $26,000 plus $56,000 as the reasonable value for his services. The out-of-pocket expenses consisted of $8,800 for architectural fees; $2,200 for engineering fees and $15,000 for legal fees. Although the plaintiff requested it, the jury did not award him any damages for lost profits.

*Discussion*

■ A motion for a directed verdict, made at the close of all the evidence, is a condition precedent to a motion for a judgment notwithstanding the verdict. A motion for a directed verdict was made by the defendant and for purposes of this motion, it will be assumed that the issues raised in the later motion were adequately raised in the earlier one.

■ At the outset, it might be well to note that great care should be exercised in granting a motion for judgment notwithstanding the verdict since it deprives the party against whom the motion is granted of the factual determination made by the jury. *Lee v. Joseph E. Seagram & Sons, Inc.,* 413 F.Supp. 693, 696 (S.D.N.Y.1976), aff'd, 552 F.2d 447 (2d Cir.1977). The cor-

rect standard to be applied in the determination of that motion is clearly stated in *Simblest v. Maynard*, 427 F.2d 1 (2d Cir. 1970) at p. 4:

> Simply stated it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached. . . . On a motion for judgment n.o.v., the evidence must be viewed in the light most favorable to the party against whom the motion is made and he must be given the benefit of all reasonable inferences which may be drawn in his favor from that evidence.

The arguments of the defendants insofar as they relate to the existence of any agreement between the parties can be easily disposed of by stating that viewing the evidence most favorably to the plaintiff and giving him the benefit of all reasonable inferences to be drawn from that evidence, it is impossible to find that the only verdict reasonable men could have reached is a verdict for the defendants. That conclusion is compelled by the principle that whether or not a joint venture exists is a question of fact and a finding that it does exist would be overturned only if clearly against the weight of the evidence. *See, e.g., Fitch v. King*, 279 Ill. 62, 65, 116 N.E. 624, 625 (1917); *United States v. Standard Oil of California*, 155 F.Supp. 121, 148 (S.D.N.Y.1957), aff'd 270 F.2d 50 (2d Cir. 1959).

■ The jury was instructed on the elements of a joint venture, the existence of which the plaintiff had the burden of proving. They determined that the plaintiff met his burden and that the required elements were to be found in oral and written communications between the parties and they went on to identify the writings they considered for that purpose. The jury's determination in this regard is not clearly against the weight of the evidence.

The argument of the defendants that the agreement runs afoul of the Statute of Frauds and is, therefore, void is predicated upon N.Y.G.O.L. § 5–703. That statute, in essence, requires contracts and conveyances concerning real property to be in writing subscribed by the party to be charged. The defendants contend that since the alleged agreement between the parties contemplated a transfer of an interest in real property owned by MPLC to the joint venture, the Statute of Frauds was implicated. They argue that there was neither a writing nor part performance and that the Statute was therefore not satisfied. Primary reliance is placed by the defendant on *Pounds v. Egbert*, 117 App.Div. 756, 102 N.Y.S. 1079 (2d Dept.1907).

The plaintiff contends that a joint venture for the purchase, sale and ownership of land is not encompassed by the Statute of Frauds. Principal reliance is placed by the plaintiff upon cases such as *Mattikow v. Sudarsky*, 248 N.Y. 404, 162 N.E. 296 (1928); *Murnane v. Maxson Electronics Corp.*, 221 N.Y.S.2d 1015 (S.Ct.Suff.Co. 1961), and *Wooten v. Marshall*, 279 F.2d 558 (2d Cir.1960).

The rule that oral contracts of joint venture to deal in real property are valid can be traced to Vice Chancellor Wigram in Dale & Hamilton, 5 Hare 369 (1846). This rule is not a universal one but surely represents the view of the majority of jurisdictions which have considered the question. The minority view, that the Statute of Frauds is applicable to oral contracts, can be traced to Justice Story's opinion in *Smith v. Burnham*, 3 Sumner 435 (1838).

Perhaps the leading case representing the majority view is *Chester v. Dickerson*, 54 N.Y. 1, 6–8 (1873) (Earl, J.), although there is disagreement as to whether the comments of Judge Earl on this issue were dicta or necessary to the decision, *cf. Mattikow v. Sudarsky, supra*, 248 N.Y. at 406, 162 N.E. 296 with *King v. Barnes*, 109 N.Y. 267, 16 N.E. 332 (1888). The defendants do not dispute the existence of that rule. They do dispute its applicability to this case. The defendants insist that a distinction must be made between a case in which the joint venture is created to deal in land to be acquired thereafter and the case

in which at the time of the creation of the joint venture the land is already owned by one of the parties so that a conveyance by him is necessary to effect the transfer. They contend that the latter case falls within the Statute of Frauds and is controlling here.

There can be no dispute about the fact that the creation of this joint venture clearly contemplated the transfer by MPLC (one of the "venturers") of its leasehold interest in the real property to the joint venture. Paragraph 3.6 of the proposed joint venture agreement (Defendants' Exhibits A, B, C and D) read as follows:

> 3.6 *Effective Date Transactions.* On the Effective Date the Venturers shall consummate the following transactions, all of which shall be deemed to take effect simultaneously: (a) *Master Lease.* Morris Plains shall transfer and assign to the Venture all of its right, title and interest in, to and under the Master Lease; and the Venture shall accept such transfer and assignment and assume all of the obligations of Morris Plains thereunder.

■ A review of the prevailing authority compels the conclusion that the Statute of Frauds is applicable to the facts of this case. The distinction between the case of the joint venture to deal in land to be acquired in the future and the joint venture in which the land is already owned by one venturer to be conveyed to the enterprise was recognized in *Chester v. Dickerson, supra,* in these terms, at pp. 8–9:

> But suppose two persons, by parol agreement, enter into a partnership to speculate in lands, how do they come in conflict with the statute of frauds? No estate or interest in land has been granted, assigned or declared. When the agreement is made no lands are owned by the firm, *and neither party attempts to convey or assign any to the other.* The contract is a valid one, and in pursuance of this agreement they go on and buy, improve and sell lands.... *Within the meaning of the statute in such case neither conveys or assigns any land to the other, and hence there is no conflict with the statute.* The statute is not so broad as to prevent proof by parol of an interest in lands; *it is simply aimed at the creation or conveyance of an estate in lands without a writing.* (Emphasis added)

Perhaps the leading American case in which the distinction is made is *Burgwyn v. Jones,* 113 Va. 511, 75 S.E. 188 (1912). *See also, Pounds v. Egbert, supra,* 117 App.Div. at 758–759, 102 N.Y.S. 1079; *Edgcomb v. Clough,* 275 Pa. 90, 118 A. 610 (1922); *Stockdale v. Sellers,* 102 Pa.Super. 447, 157 A. 30 (1931); *Backus Plywood Corp. v. Commercial Decal, Inc.,* 317 F.2d 339 (2d Cir.) *cert. denied,* 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963); 42 Harv. L.Rev. 934, 935–936 (1929); Brightman, Oral Partnership Agreements Concerning an Interest in Land, 9 Corn.L.R. 97, 103 (1923). The contrary view which is clearly articulated in *Speyer v. Desjardins,* 144 Ill. 641, 32 N.E. 283 (1892) is the minority view and is not followed in New York as the cases cited, *supra,* indicate.

The cases upon which the plaintiff relies in support of his argument that the Statute of Frauds is not applicable require some comment. The case upon which primary reliance is seemingly placed is *Mattikow v. Sudarsky, supra,* but that case is patently distinguishable, involving as it does, a partnership agreement for the *future* acquisition of lands to which the general rule is applicable. *Murnane v. Maxson Electronics Corp., supra,* appears to concern analogous facts in which the plaintiff sought a conveyance of the land and the defendant pleaded the Statute of Frauds as an affirmative defense. In denying the plaintiff's motion to strike the affirmative defense the court said at pp. 1016–1017: "... the questions of fact raised by the pleadings preclude granting the motion. As the facts develop at trial the affirmative defense may become worthless, but without the full opportunity by both sides to present their evidence, the court cannot hold with certainty that the statute does or does not apply." That decision can hardly be said to support the view that the Statute of Frauds has no application to this case.

*Wooten v. Marshall, supra,* also relied upon by the plaintiff, contemplated the acquisition of property after the formation of the joint venture and so does not call into play the limitation upon the general rule deemed applicable here. The observation made in passing in that case that *Pounds v. Egbert, supra,* was modified by *Mattikow v. Sudarsky, supra,* is in my view and with all due respect, a misreading of *Mattikow.*[1] *Dayvault v. Baruch Oil Corp.,* 211 F.2d 335 (10th Cir.1954); *Yonofsky v. Wernick,* 362 F.Supp. 1005 (S.D.N.Y.1973); *Weisner v. Benenson,* 275 App.Div. 324, 89 N.Y.S.2d 331 (1st Dept.1949) aff'd 300 N.Y. 669, 91 N.E.2d 325 (1950); *Eidelberg v. Zellermayer,* 5 A.D.2d 658, 174 N.Y.S.2d 300 (1st Dept.1958), *aff'd,* 6 N.Y.2d 815, 188 N.Y.S.2d 204, 159 N.E.2d 691 (1959); *Boxill v. Boxill,* 201 Misc. 386, 111 N.Y.S.2d 33 (S.Ct.N.Y.Co.1952); *Traphagen v. Burt,* 67 N.Y. 30 (1876) likewise all involved the contemplated acquisition of property after the creation of the joint venture.

Having concluded that the Statute of Frauds is applicable, the plaintiff may nevertheless prevail if he can succeed in showing sufficient part performance to take the case out of the statute. Part performance is a judicially developed doctrine to prevent the Statute of Frauds from doing grave injustice. The plaintiff may also prevail if he can succeed in establishing the existence of memoranda sufficient to satisfy the Statute of Frauds. The applicability of the doctrine of part performance will be considered first.

 The essential elements necessary to make that doctrine operative are: (1) the contract must be clearly proved; (2) plaintiff's reliance upon it must .be reasonable; and (3) his actions must be directly referable to it. *See Burns v. McCormick,* 233 N.Y. 230, 232, 135 N.E. 273 (1922). The existence of a contract was established to the satisfaction of the jury as was its breach by the defendants. After receiving instructions that the entitlement of the plaintiff to an award of damages is dependent upon his proof that the defendants' breach of the agreement was the proximate cause of the damages he claims to have sustained, the jury made specific findings as to the plaintiff's harm in response to a special verdict form. Those determinations

---

**1.** In *Pounds v. Egbert,* the complaint prayed for an accounting and for a decree directing the conveyance to the plaintiff of an undivided half of property. That was the relief granted by the judgment appealed from. The court reversed the judgment below. In the course of its opinion, the court said, 117 A.D. at p. 759, 102 N.Y.S. 1079:

> The judgment appealed from does not adjudge that the premises in dispute are partnership property; on the contrary, it decrees specific performance of an agreement to convey land, and as incidental to that relief directs an accounting to ascertain the contributions of each.

And then on p. 762, 102 N.Y.S. 1079:

> I do not go so far as to say that there is no evidence whatever to sustain a finding of partnership, but in view of the meager evidence on this point, and of the fact that the judgment rendered is inconsistent with a partnership, and of the further fact that we sit as a court of review, I think it better to grant a new trial than to attempt a modification of the judgment.

In *Mattikow v. Sudarsky,* the court found that *Pounds v. Egbert* was not inconsistent with the authorities cited in *Mattikow* for the principle that a partnership may exist in reference to the purchase, sale and ownership of lands, and that it may be created by parol agreement. The Court said that insofar as it was attempted to distinguish *Pounds* from the authorities cited it was not in point. *Pounds,* said the court, 248 N.Y. at p. 407, 162 N.E. 296:

> ... came up on an appeal from a judgment which did not adjudge that the premises in question were partnership property but on the contrary decreed specific performance of the agreement to convey land and as incidental to that relief directed are accounting to ascertain the contributions of each party. While the court held that specific performance could not be had, it granted a new trial to determine the question whether a partnership was ever formed between the parties. Here the contract of partnership was established and the question is whether plaintiff is entitled to any relief.

Far from modifying *Pounds, Mattikow* simply decided that *Pounds* was not in point and readily distinguishable.

In *Wooten,* the court said, at p. 560 that *Mattikow* established a distinction between a commercial venture and one contemplating a mere tenancy in common. I have been unable to find the words "commercial venture" or "tenancy in common" used in *Mattikow,* let alone any distinction drawn between the two.

by the jury, as has already been indicated, must not be cavalierly ignored. They constitute implicit, if not explicit, findings that the first two elements listed above have been satisfied.

The classic statement of the test to determine the existence of the third element is Judge Cardozo's in *Burns v. McCormick, supra:*

> There must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership assured, if not existing.

The examination of endless numbers of cases with infinite variations of fact in countless contexts would not advance us any closer to the answer to the questions that must be asked: was the performance of this plaintiff, in the context of this case, unequivocally referable to an agreement? Was the performance of this plaintiff unintelligible or at least extraordinary unless as an incident to an agreement? I find that it was and that his performance satisfies the statute. I find that his efforts with respect to financing; with respect to engineering and architectural concerns, with respect to continuous communication with the defendants' agents and with respect to his many other activities reflected in great detail in the record were unequivocally referable to the agreement found by the jury and were unintelligible and extraordinary divorced from that agreement.

In anticipation of the Statute of Frauds problem, the jury was asked to state whether the joint venture agreement they already found was entirely oral, entirely written, partly oral and partly written and if writings were involved, to identify the writings. The jury, as has already been indicated, found the agreement to be embodied in written and spoken words and identified the specific writings. Those responses by the jury, it was thought, might be helpful in deciding whether there was a memorandum sufficient to satisfy the Statute of Frauds.

■ Such a memorandum may be found in separate writings, all of which need not be signed by the party to be charged. It is enough if the connection between the documents not signed with those that are is clearly enough demonstrated by subject matter or by internal reference. *Flammia v. Mite Corp.*, 401 F.Supp. 1121, 1133 (E.D. N.Y.1975), *aff'd* 553 F.2d 93 (2d Cir.1977).

■ A detailed summary of each of the writings identified by the jury would needlessly burden the decision. Suffice it to say that the requirements of a memorandum sufficient to satisfy the Statute of Frauds can easily be found in those writings.

If the sufficiency of the part performance were in doubt, the sufficiency of the writings are not and on either ground, the Statute of Frauds is satisfied. The defendants are thus precluded from hiding behind a statute that was enacted for the purpose of preventing the enforcement of promises that were never made.

I have proceeded thus far on the assumption that the Statute of Frauds is applicable to this case for the reasons stated. I should mention the view expressed nearly sixty years ago that "... most of the jurisdictions which hold to the majority rule where the land is purchased after the agreement is made likewise hold that the oral agreement to form the partnership and to acquire the interest in the land at the same time is valid." Brightman, Oral Partnership Agreements Concerning an Interest in Land, 9 Cornell Law Quarterly 97, 106–107 (1924). See also, 1963 Report, Recommendations and Studies of the New York Law Revision Commission, 505. The Court is not aware of any New York authority either accepting or rejecting that view. Were that view to be adopted, however, it would be applicable here and obviate the necessity for considering the Statute of Frauds at all.

The argument might also be advanced that although an oral agreement to give one venturer an interest in land owned by another does not serve to give the former an enforceable right to a legal or equitable interest in the land (assuming the Statute of Frauds is applicable and not otherwise

satisfied) it should not preclude the successful pursuit of an action at law for breach of contract—the remedy this plaintiff pursues. In this connection the court in *Redditt v. Horn*, 361 Pa. 533, 64 A.2d 809 said, at page 811:

> However, the oral contract pleaded by the plaintiff, if established, would be capable of supporting an action at law for damages for the value of services performed, and costs and expenses incurred by the plaintiff in reliance upon the alleged oral agreement and for which he has not been compensated or reimbursed. Of course, such damages would not be for the loss of the bargain pleaded by the plaintiff. Relief to that extent would be tantamount to affording him specific performance of a contract in a different form and may not, therefore, be had.

In the light of *Redditt*, one can only marvel at the collective wisdom and unerring instinct of the jury in this case. They awarded the plaintiff the expenses he incurred and the reasonable value of his services. They gave him nothing for the loss of his bargain.

■ That brings me to the defendants' contention that there was insufficient evidence to support the jury's award of architectural and engineering fees. It is not disputed that neither the architect nor the engineer testified as to the value of his services. The plaintiff offered no bills from either of them nor cancelled checks to evidence payment. He testified that he has not, in fact, paid anything to the architect and that he paid $2200 to the engineer. In the absence of any evidence as to the reasonable value of the services performed by the architect and the engineer, the jury's award of any sum attributable to their services was purely speculative.

The observation made in *Winch v. Warner*, 186 App.Div. 710, 174 N.Y.S. 819 (1st Dept.1919) is particularly appropriate for a case such as this in which the value of professional services is involved as it was there. The rule then is, said the Court, at page 714, 174 N.Y.S. 819:

> that if the nature of the services be such that it is not to be presumed that the

value thereof would be common knowledge, and, therefore, possessed by the jurors, there should be such proof of the value as could be made in the circumstances of the particular case.... It is quite clear that this case is susceptible of better evidence than was presented.

*See also Gilman v. Westchester County Savings Bank*, 247 App.Div. 390, 287 N.Y.S. 413 (1st Dept.1936). The jury's verdict awarding the plaintiff $8,800 for architectural fees and $2,200 for engineering fees is, therefore, set aside and to that extent the defendant's motion for judgment notwithstanding the verdict is granted. In all other respects that motion is denied.

I have not addressed the argument advanced by the defendants on the question of unilateral and bilateral contracts for the reason that the facts were exhaustively presented to the jury and the competing views of those facts forcefully urged upon them by counsel. The jury was also instructed on the law governing the creation and breach of joint venture agreements. They decided that a joint venture agreement did exist, that it was created by a combination of oral and written words and that the agreement was breached. Those were factual determinations properly left for the jury to make. Their determinations were not irrational and were determinations reasonable persons might have made upon the evidence before them. *See Babdo Sales, Inc. v. Miller-Wohl Co., Inc.*, 440 F.2d 962 (2d Cir.1971); *Reprosystem, B.V. v. S.C.M. Corp.*, 522 F.Supp. 1257 (S.D.N.Y.1981).

■ In any event, the defendants' argument that the contract was unilateral and the implications that flow from that argument which, in their view, make the contract unenforceable, was raised for the first time in their motion for judgment n.o.v. That argument should have been raised as an affirmative defense and was not. I find, therefore, that it was waived and cannot be raised at this stage of these proceedings.

■ Rule 8(c) of the Fed.R.Civ.P. provides that failure of consideration when

claimed as a defense, should be affirmatively pleaded. Failure to plead an affirmative defense as required by that Rule constitutes a waiver of that defense and its exclusion from the case. The unalleged defense cannot be raised by a general denial. Wright & Miller, Federal Practice and Procedure: Civil § 1278. The defendants' contention that the agreement was unilateral in that it was a promise by them in exchange for an act by the plaintiff which was never performed is a contention that there was a failure of consideration. *Ingrassia v. Shell Oil Company*, 394 F.Supp. 875 (S.D.N.Y.1975), cited by the defendants, makes that plain, on page 882: "A contract to be enforceable, must be supported by a valid consideration .... In unilateral contracts the consideration is the performance of the specified act or acts. The performance of the act is both the acceptance of the offer and the consideration to support the offeror's promise. *Keuka College v. Ray*, 167 N.Y. 96, 60 N.E. 325 (1901); *Barnes v. Perin*, 12 N.Y. 18 (1854); Restatement, Contracts §§ 52, 75." That defense, not having been affirmatively pleaded was waived.

The plaintiff's motion for prejudgment interest is based upon N.Y.C.P.L.R. § 5001 which provides in pertinent part as follows:

(a) *Actions in which recoverable.* Interest shall be recovered upon a sum awarded because of a breach of performance of a contract ....

(c) *Specifying date, computing interest.* The date from which interest is to be computed shall be specified in the verdict, ... If a jury is discharged without specifying the date, the court upon motion shall fix the date, ...

The language of the statute leaves no room for interpretation. Interest *shall* be recovered upon a sum awarded because of a breach of contract. The plaintiff having failed to ask that the jury fix the date from which interest is to be computed "did not waive his right to have a date fixed and interest computed, but only his right to have the jury do the former." *Julien J. Studley, Inc. v. Gulf Oil Corporation*, 425 F.2d 947, 948 (2d Cir.1969).

The court being thus obliged to fix the date from which interest is to be computed is advised that the computation shall be "from the earliest ascertainable date the cause of action existed, ..." N.Y.C.P.L.R. 5001(b). I find that date to be February 26, 1980, the date on which the plaintiff was informed that the defendants terminated their participation in the enterprise.

The plaintiff's motion to amend the judgment pursuant to Rules 59(e) and 60 of the Federal Rules of Civil Procedure is hereby granted. Interest shall be computed from February 26, 1980 on the judgment which has been reduced to $71,000 by vacating the award of $8,800 for architectural fees and $2,200 for engineering fees as hereinabove indicated.